Mary GLOVER et al., Plaintiffs,

v.

Perry JOHNSON, Director, Michigan Department of Corrections, et al., Defendants.

Civ. A. No. 7–71229.

United States District Court, E. D. Michigan, S. D.

Dec. 23, 1977.

Judith Magid, Center for Urban Law, Charlene M. Snow, Michigan Legal Services, Detroit, Mich., for plaintiffs.

William E. Molner, Asst. Atty. Gen., Crim. Div., Judith I. Blinn, Lansing, Mich., for defendants.

## OPINION

FEIKENS, Chief Judge.

This is an action for declaratory and injunctive relief, brought to redress alleged unconstitutional inequalities in the Michigan Department of Corrections' inmate treatment and educational programs. Plaintiffs are five named and several unnamed women inmates,[1] currently incarcerated at the Department's Huron Valley Women's Facility in Ypsilanti, Michigan. Their suit charges defendants, various Corrections Department officials, with failing to provide educational and vocational opportunities to female inmates under the Department's jurisdiction equal to those provided to male inmates. Plaintiffs have stated claims under 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. Jurisdiction is based on 28 U.S.C. § 1343(3) and (4).

Plaintiffs' complaint is a broad-based, institutional attack on the adequacy of the Department's current educational policies and programs for women inmates. Plaintiffs allege disparities in the number and variety of educational and vocational courses and degrees available to male and female inmates, disparities in library and law library facilities, halfway homes, correctional camps, and prison industry, stereotyping of female vocational programs, and discrimination in prison wages. The action is brought as a class action on behalf of all female inmates in Michigan. Plaintiffs seek both a judgment declaring that the Corrections Department's present policies and programs are a denial of Equal Protection and a permanent injunction compelling the Department to improve its treatment programs for women on a Department-wide basis.

1. Two plaintiffs have petitioned the court to proceed as "Jane Doe" plaintiffs and have filed supporting affidavits in which they allege fear of retaliation if their participation in the suit becomes known to defendants.

At the time this suit was instituted, most women inmates in Michigan, approximately 380 of 420, were housed in the Women's Division of the Detroit House of Correction; these women have since been moved to the new Huron Valley Women's Facility. The remaining women, approximately 40, are housed on a temporary and rotating basis in the Kalamazoo County Jail, pursuant to a contract between the Corrections Department and Kalamazoo County. Plaintiffs have amended their complaint to add the Kalamazoo County Sheriff as defendant, and to allege further inadequacies in the educational and treatment programs available at the Kalamazoo County Jail. Plaintiffs have also alleged a number of other civil rights violations at the County facility, including overly-restrictive mailing and visitation privileges, an inadequate law library, and denial of religious services. Declaratory and injunctive relief is sought for these claims as well.

Presently before the court is plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a class composed of "all female penal inmates who are now, or may be in the future, incarcerated at the Huron Valley Women's Facility and at the Kalamazoo County Jail." Additionally, and in light of their further claims with respect to the Kalamazoo County facility, plaintiffs seek certification of a subclass composed of all present and future female felons incarcerated at the Kalamazoo County Jail. Defendants oppose class certification.

In order to maintain their suit as a class action, plaintiffs must satisfy the four prerequisites of Rule 23(a) and at least one of the conditions of Rule 23(b). Rule 23(a) provides:

(a) Prerequisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Certification is sought here under Rule 23(b)(2), on the ground that defendants have "acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The burden is upon plaintiffs to establish compliance with all requirements of Rule 23. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197 (6th Cir. 1974). At the same time, however, these requirements should be liberally construed in civil rights actions, *Weathers v. Peters Realty Corp., supra* at 1200, especially where, as here, only declaratory and injunctive relief is sought. *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975); see Advisory Committee Note to the 1966 Amendment to Rule 23, 39 F.R.D. 98, 102.

Defendants' answer in opposition to plaintiffs' motion raises only two objections to class certification. Defendants first contend that plaintiffs' proposed class is fatally indefinite, because the state's population of female inmates is in a perpetual state of flux, with individuals constantly entering and leaving the class. This circumstance, in defendants' view, coupled with plaintiffs' attempt to include all "future" female inmates within their class, is said to render the class infinite in scope and make identification of class membership impossible. *Rappaport v. Katz*, 62 F.R.D. 512 (S.D.N.Y. 1974); *DeBremcecker v. Short*, 433 F.2d 733 (5th Cir. 1970); *Chaffee v. Johnson*, 229 F.Supp. 445 (D.Miss.1964); aff'd 352 F.2d 514 (5th Cir. 1964), cert. den. 384 U.S. 956, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1965).

The Court disagrees. The fact that membership of the class may change over time in no way qualifies or undermines the identity of the class for purposes of Rule 23. As Judge Fox stated, in *Prisoners Progress Assoc. v. Milliken* (W.D.Mich., C.A. No.G–75–289, May 27, 1977, slip op., p. 2):

Defendants confuse definition of the class with static membership. Members

of the class will enter and leave as their status in the system changes. That does not affect the definition of membership, however, and actual membership of the class need not be precisely drawn, *Lund v. Affleck,* 388 F.Supp. 137 (D.C.R.I.1975) as long as individual members are capable of being identified as being in or out of the class, *Eisman v. Pan American World Airlines,* 333 [336] F.Supp. 543 (D.C.Pa. 1971). Further, greater precision is needed in defining a class where damages are sought than a class action seeking injunctive or declaratory relief.

See also *Robertson v. National Basketball Assoc.,* 389 F.Supp. 867, 897 (S.D.N.Y.1975). If anything, the inevitable turnover of the state's female inmate population makes class certification advantageous in this case, since joinder of all class members becomes correspondingly more impractical and mootness of individual claims more likely. *Santiago v. City of Philadelphia,* 72 F.R.D. 619, 624 (E.D.Pa.1976); *Adderly v. Wainwright,* 46 F.R.D. 97, 98 (M.D.Fla.1968); *Wallace v. McDonald,* 369 F.Supp. 180, 188 (E.D.N.Y. 1973). As stated in *Jones v. Wittenberg,* 323 F.Supp. 93, 99 (N.D.Ohio 1971), a similar civil rights class action brought on behalf of a transient jail population:

> It is apparent also that this action can only be maintained realistically as a class action, the class consisting of those persons who at any given point of time are confined in the Lucas County Jail. The claims of any particular individual could easily become moot at any time, and must become moot within a relative limited period. It is also very difficult to demonstrate that any one individual has suffered a specific wrong which can be righted without regard to the totality of wrongs in the system.

█ Plaintiffs' request for inclusion of all future female inmates as members of the proposed class does not, in the Court's view,

enlarge the scope of the class as otherwise defined. Read literally, of course, such an inclusion would "portend an infinite class," in defendants' words, and would compel the Court to assert jurisdiction over persons of unknown identity who do not yet possess justiciable legal claims; this would clearly be improper. *Mathews v. Diaz,* 426 U.S. 67, 71–72 nte. 3, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). The Court, however, construes the requested inclusion of future female inmates as a provision which merely recognizes that the state's population of female felons will change over time and that female felons who come within the jurisdiction of the Department of Corrections following Rule 23 certification must, at that point, become members of the plaintiff class as well.[2] See *Hamilton v. Love,* 328 F.Supp. 1182, 1191 (E.D.Ark.1971). This same issue was raised and discussed in *Curtis v. Voss,* 73 F.R.D. 580, 582–83 (N.D.Ill. 1976), a § 1983 class action brought on behalf of "all present and future inmates of the Stateville Correctional Center," alleging guard brutality and other abuses:

> To a certain extent the problem of persons who may or will in the future become class members is semantic . . . [T]he exclusion of an individual at the time the class is defined does not imply exclusion at the time judgment is entered. Moreover, from a pragmatic viewpoint, the district court is concerned with those who in the future may be class members only to the extent that at some point, their previously hypothetical grievance matures into a claim upon which the requested relief may be granted. When this occurs, the person qualifies as a present class member, even if the class definition is specifically limited to those who have already been injured or threatened with injury by the defendants' conduct. Since the future class members who actually suffer injury thereby be-

2. It was undoubtedly upon this basis that the United States Court of Appeals for the Sixth Circuit has, on at least two occasions, affirmed certification of classes which included future members. *Manning v. International Union, UAW,* 466 F.2d 812 (6th Cir.), cert. den. sub nom. *Manning v. General Motors Corp.,* 410 U.S. 946, 93 S.Ct. 1366, 35 L.Ed.2d 613 (1973) (Dist.Ct.Op. reported in 14 F.R.Serv.2d 1083, 1085 (N.D.Ohio, 1971)); *Afro-American Patrolmen's League v. Duck,* 503 F.2d 294, 298 (6th Cir. 1974).

come present class members eligible for relief, a definition encompassing future members is superfluous.

See also *Theriault v. Carlson*, 353 F.Supp. 1061, 1066–67 (N.D.Ga.1973); and *Davy v. Sullivan*, 354 F.Supp. 1320, 1325, nte 6. ("[T]he very nature of this type of suit contemplates a benefit for those similarly situated in the *future* . . . .") (Emphasis in original). The Court finds that plaintiffs' proposed class is sufficiently finite and identifiable to qualify for certification under Rule 23.

As their second argument against class certification, defendants contend that the named plaintiffs have failed to demonstrate commonality and typicality, as required by Rule 23(a)(2) and (3), because they have failed to show that all or even most other women inmates in Michigan share their views regarding the inadequacies of the Department's present educational and vocational programs. In the absence of such a showing, the allegations of plaintiffs' complaint are said to represent only the subjective views of a few isolated individuals and not the typical and common claims of the proposed class.

> What might constitute unequal opportunity for one woman, may not be so for another, who may not feel that these programs deny them their constitutional rights, or are even subjectively inadequate.

Defendants' Answer in Opposition To Motion For Designation As a Class Action, p. 3.

■ This argument is wholly without merit.[3] There is nothing "subjective" about the constitutional claims presented in the complaint. As plaintiffs point out, the thrust of their lawsuit is a claim of unconstitutional inequality in the educational *opportunities* available through the Department of Corrections' educational programs. This claim is typical and common to plaintiffs' proposed class regardless of whether

most women inmates would view the present system as inadequate for their own purposes or would avail themselves of further educational and vocational training if offered. The test for commonality in a civil rights action brought under Rule 23(b)(2) was correctly stated and discussed in *Sweet v. General Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D.Ohio 1976):

> The plaintiffs have alleged in their complaint a general across-the-board policy of sexual discrimination. Clearly each individual member of the class has a unique situation and has been affected in diverse ways by the alleged discriminatory policy. That there are differences in situation and effect does not preclude a finding by this Court of commonality. That each class member's case is in other ways unique does not affect the commonality of the action, as long as the members of the class have allegedly been affected by a *general* policy of the defendant, and the general policy is the focus of the litigation. [Emphasis in original.]

See also *Gibbs v. Titelman*, 369 F.Supp. 38, 52–53 (E.D.Pa.1973).

■ Thus, it is not necessary that all members of the class wish to seek relief from defendants' alleged unconstitutional actions or that all members take an interest in the maintenance of the suit. *Norwalk Core v. Norwald Redevelopment Agency*, 395 F.2d 920, 937 (2nd Cir. 1968); *Davy v. Sullivan, supra* at 1325. As Professor Moore has written:

> "Typicalness" is not a subjective test, authorizing a judge to dismiss a class action based on a substantial legal claim where he thinks some members of the class may prefer to leave the violation of their rights unremedied.

3B Moore's Federal Practice § 23.06–2, p. 23–327. Nor is it necessary that all members of the proposed class be identically

---

**3.** Though wholly without merit, defendants' argument is not wholly without legal support. See *Wilson v. Kelley*, 294 F.Supp. 1005, 1012 (N.D.Ga.1968); *Linker v. Unified School Dist. # 259*, 344 F.Supp. 1187, 1195 (D.Kan.1972); *Ihrke v. Northern States Power Co.*, 459 F.2d 566, 572 (8th Cir. 1972). See also *White v. Gates Rubber Co.*, 53 F.R.D. 412, 415 (D.Colo. 1971) ("It seems apparent that a claim cannot be typical of the claims of a class if no other member of the class *feels* aggrieved.") (Emphasis added.)

situated, *Griffin v. Burns*, 431 F.Supp. 1361, 1365 (D.R.I.1977); or that all members be aggrieved by defendants' conduct or policies, *Roberts v. Cameron Brown Co.*, 72 F.R.D. 483, 488 (S.D.Ga.1975); *Sturdevant v. Deer*, 73 F.R.D. 375, 378 (E.D.Wis.1976); see Advisory Committee Note to the 1966 Amendment to Rule 23, *supra* at 102.

Defendants' argument has been raised and rejected in a number of past cases. In *Snyder v. Board of Trustees*, 286 F.Supp. 927 (N.D.Ill.1968), plaintiffs brought a class action on behalf of all students at the University of Illinois, challenging the constitutionality of a state statute, the "Clabaugh Act," which barred "subversive" student organizations from university facilities. Class certification was granted, despite defendants' claim that the action concerned only a small minority of the student body:

It is immaterial that some members of the student body at the University of Illinois, or that some members of the faculty, may not approve of the maintenance of this lawsuit. The constitutionality *vel non* of the Clabaugh Act has been called into question in an actual controversy between the named plaintiffs and the defendants. Resolution of this issue will, as a practical matter, be dispositive of the rights of all other members of the class, whether or not they approve of the maintenance of this suit.

*Snyder v. Board of Trustees, supra* at 931. In *Sullivan v. Houston Independent School Dist.*, 307 F.Supp. 1328 (S.D.Tex.1969), plaintiffs sought class certification in an action brought to enjoin alleged unconstitutional censorship and suppression of plaintiffs' high school student newspaper. The court certified a class composed of all students then enrolled in the secondary schools of the Houston Independent School District:

Defendants contend that this designation is not proper under Rule 23 because the majority of Houston secondary students are not in sympathy with the views or methods of these plaintiffs and are, therefore, not "similarly situated." This contention misses the point. All of the members of this class are subject to the same regulations of the Houston School District which have been alleged to be unconstitutional on their face and as applied. It is irrelevant to speculate how many students might need to invoke the first amendment as protection from official sanctions; the fact that each member is subject to the same specific sort of deprivation of constitutional rights as the representative parties is enough.

*Sullivan v. Houston Independent School Dist., supra* at 1337–38.

*Driver v. Helms*, 74 F.R.D. 382 (D.R.I. 1977), was a class action against the Director of the Central Intelligence Agency alleging an unconstitutional program of surreptitiously opening and photographing the first class mail of suspected citizens. In opposing class certification, defendants argued that the requirement of "adequate representation" had not been met:

It has been suggested by one of the defendants that this requirement is not met in the present case because some persons whose mail was monitored might regard the East Coast Mail Intercept Project as entirely reasonable and in the national interest. This assertion, if true, is irrelevant to the question of whether this action may be maintained as a class action.

*Driver v. Helms, supra* at 403. Similarly, in *Dawes v. Philadelphia Gas Comm.*, 421 F.Supp. 806 (E.D.Pa.1976), plaintiffs brought an action under 42 U.S.C. § 1983 against a gas utility on behalf of all of its customers whose gas service has been terminated without a prior notice or hearing. Defendants argued that the claims of the named plaintiffs were not typical of the class because most class members were content with the status quo and did not care to challenge the utility's present termination policies. This argument was rejected:

If there is a constitutional right to a pre-termination hearing, individual plaintiffs surely cannot be precluded from asserting such a right merely because a majority of their fellow customers might prefer not to have the right asserted. In determining whether the litigation as-

serting the existence of such a right may properly be maintained as a class action, the issue is merely whether the representative plaintiffs have demonstrated the probability of the existence of a sufficient number of persons similarly inclined and similarly situated to render the class action device the appropriate mechanism for obtaining a judicial determination of the rights alleged.

*Dawes v. Philadelphia Gas Comm., supra* at 813. The Court is persuaded by these authorities to find that plaintiffs' complaint does state claims which are typical of and common to the proposed class, as required by Rule 23(a)(2) and (3).

Though not disputed, the Court further finds that plaintiffs' proposed class satisfies all of the remaining requirements of Rule 23(a) and (b) as well. The proposed class would consist of approximately 420 individuals, making joinder of all members clearly impracticable. The Court has no doubt that the named plaintiffs, represented by counsel experienced in prisoner rights litigation, will fairly and adequately represent the interests of the class. Finally, plaintiffs' claims are generally applicable to their class and, if proven, would be appropriate for class-wide declaratory and injunctive relief.

The Court further finds that a subclass composed of women inmates incarcerated in the Kalamazoo County Jail should be certified. Subclasses under Rule 23(c)(4) are appropriate whenever a distinct segment of the class presents special factual circumstances, *United States ex rel. Sero v. Preiser*, 372 F.Supp. 660, 662 (S.D.N.Y.1974) (prisoner § 1983 class action challenging prison conditions should provide for subclasses where distinct variance among institutions exists); different causes of action, *Monroe v. Bombard*, 422 F.Supp. 211, 218 (S.D.N.Y.1976), or special legal or equitable prayers for relief, *Weathers v. Peters Realty Corp., supra* at 1200–1201. All of these conditions are present in this case with respect to the women inmates housed in the Kalamazoo County Jail. Plaintiffs Gant and Settles may be appointed to represent this subclass though they are no longer

incarcerated at the County facility. In view of the admittedly rapid turnover of women inmates in the subclass, there is no need or advantage in disqualifying these plaintiffs from representing the subclass on grounds of mootness. *Gerstein v. Pugh*, 420 U.S. 103, 110–111, nte. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1974); *Inmates of San Diego Co. Jail v. Duffy*, 528 F.2d 954 (9th Cir. 1975).

Accordingly, plaintiffs' motion for class certification is granted. An appropriate order may be submitted.