John DOE, Jack Roe and James Woe

v.

Bernard D. ROSTKER, National Director of the Selective Service System, The Selective Service System, and The United States.

No. C 80–3151 SW.

United States District Court, N. D. California.

Feb. 10, 1981.

Raymond C. Grueneich, Santa Cruz, Cal., R. Charles Johnson, San Anselmo, Cal., for plaintiffs.

G. William Hunter, U. S. Atty., George Christopher Stoll, Asst. U. S. Atty., Civ. Div., San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER DISMISSING PLAINTIFFS' COMPLAINT WITHOUT PREJUDICE

SPENCER WILLIAMS, District Judge.

This action was brought pursuant to 5 U.S.C. § 552a (the Privacy Act) in an attempt by plaintiffs to maintain anonymity throughout this lawsuit. This matter came on for hearing on January 7, 1981. Although this was heard at a status conference rather than on noticed motion, the parties filed briefs and fully argued the matter. After the hearing, the court took the matter under submission.

### FACTUAL BACKGROUND

Plaintiffs Doe, Roe and Woe are male citizens of the United States born during the calendar year 1961. On July 2, 1980 President Carter issued Proclamation No. 4771 requiring males born in 1961 to register with the Selective Service System during the period July 28 through August 2, 1980. Plaintiffs have complied with this registration requirement.

Plaintiffs contend that the Proclamation directing them to register is in violation of § 4(a) of the Military Service Act, 50 U.S.C. App. § 454(a). Section 454(a) provides that each registrant "shall be immediately liable

for classification and examination, and shall, as soon as practicable following his registration, be so classified and examined..." Plaintiffs further contend defendants have violated § 5(a), 50 U.S.C.App. § 455(a)(1), which provides that "[t]he selection of persons ... shall be made from the persons who are liable for such training and service and who at the time of selection are registered and classified but not deferred or exempted..."

The "Presidential Recommendations for Selective Service Reform" sent to the Congress by President Carter on February 11, 1980 pursuant to P.L. 96–107 proposed that Congress reserve to itself the right to prevent induction into the armed forces by withholding authorization from the President to induct until circumstances warranted such authorization. The report delays classification and examination of registrants until after issuance of induction orders to each individual.

Plaintiffs contend that requiring them to divulge to the Selective Service their names, dates of birth, sex, Social Security numbers, addresses, telephone numbers and signatures violates statutory registration procedures in that they will not be classified until they are inducted. This discrepancy between the Selective Service Act's mandate and the Proclamation results in the government's possessing unlawful information. Plaintiffs allege this unauthorized possession of information violates their rights of privacy as set forth in 5 U.S.C. § 552a(g)(1).[1]

For the reason stated above, plaintiffs wish to proceed with this lawsuit anonymously. They request expungement of their names from the registration records to avoid connection with any aspect of the armed forces.

ISSUE

The sole issue is whether plaintiffs should be permitted to proceed anonymously. After careful consideration, the court holds they should not.

LEGAL STANDARDS

■ Rule 10(a) of the Federal Rules of Civil Procedure requires "the complaint ... [to] include the names of all the parties..."[2] Although the nature of this rule is one of form, the purpose behind such a rule is not solely one of administrative convenience. The rule serves to apprise the parties of their opponents, and it protects the public's legitimate interest in knowing all the facts and events surrounding court proceedings.

■ The United States Supreme Court recognized the importance of this latter interest in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), where it stated:

A trial is a public event. What transpires in the courtroom is public property... There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor

1. (g)(1) Civil remedies.—Whenever any agency

(A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;

(B) refuses to comply with an individual request under subsection (d)(1) of this section;

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

2. *See also* Fed.R.Civ.P. 17(a) and L.R. 200–1 (Local Rules of the District Court for the Northern District of California) which states in relevant part: "The name, address and telephone number of counsel (or, if in propria persona, of the party) and the specific identification of each party represented by name ... shall appear ... on the first page of each paper presented for filing...."

events which transpire in proceedings before it.[3]

As a matter of policy the parties should not be allowed to proceed anonymously absent a showing they fall into one of the categories enumerated below. Therefore, plaintiffs have no express or implied right to bring an action anonymously.

In *Roe v. State of New York*, 49 F.R.D. 279 (S.D.N.Y.1970) the court held that where plaintiffs used only pseudonyms for filing a complaint, the commencement of an action would be ineffective. In that case plaintiffs were minors who had been placed in state training schools for juvenile delinquents. That court stated that plaintiffs should be permitted to use fictitious names " 'only in the rare case where the nature of the issue litigated and the interest of the parties demand it and no harm can be done to the public interest.' "[4]

Courts have carved out limited exceptions to Rule 10 where the parties have strong interests in proceeding anonymously. Although no express standard exists setting forth these exceptions, this court's review of numerous cases has uncovered some classifiable characteristics. The most common instances are cases involving abortion,[5] mental illness,[6] personal safety,[7] homosexuality,[8] transsexuality[9] and illegitimate or abandoned children in welfare cases.[10] The common thread running through these cases is the presence of some social stigma or the threat of physical harm to the plaintiffs attaching to disclosure of their identities to the public record.

Although this court does not question the sincerity of plaintiffs' beliefs concerning the draft and war, it fails to discern a social stigma or safety problem attaching to the revelation of their names in this lawsuit. In fact, plaintiffs appear to concede that the violation of their right of privacy which allegedly would flow from disclosure of their true identities does not fit into the stigmatizing characteristics enumerated above.

Plaintiffs primarily contend that compelled disclosure of their identities would vitiate the interests they seek to protect. In *Roe v. Ingraham*, 364 F.Supp. 536, 541 n.7 (S.D.N.Y.1973) plaintiffs complained of the method of centralized record-keeping used to maintain data on patients using medications within the purview of New York's Controlled Substances Act. In that instance the court agreed with plaintiffs' contention that disclosure of their identities prior to the adjudication on the merits of their claim of a Privacy Act violation would cause them to sustain the very injury they sought to avoid. This court recognizes the *Ingraham* dilemma as a valid reason for permitting plaintiffs to proceed anonymously. However, that situation differs from

3. *Id.* 420 U.S. at 492–93, 95 S.Ct. at 1044–45, citing *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947).

4. *Id.* at 282, citing *Buxton v. Ullman*, 147 Conn. 48, 156 A.2d 508, 514 (1959), appeal dismissed, *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).

5. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton*, 410 U.S. 179 (1973); *Doe v. Hale Hospital*, 500 F.Supp. 144 (1st Cir. 1974), *cert. denied*, 420 U.S. 907, 95 S.Ct. 825, 42 L.Ed.2d 837 (1975); *Doe v. Ceci*, 517 F.2d 1203 (1st Cir. 1974); *Doe v. Deschamps*, 64 F.R.D. 652 (D.Mont.1974).

6. *Doe v. Gallinot*, 486 F.Supp. 983 (C.D.Cal. 1979); *Doe v. Harris*, 495 F.Supp. 1161 (S.D.N.Y.1980); *Doe v. Colautti*, 592 F.2d 704 (3rd Cir. 1979); *Doe v. New York University*, 442 F.Supp. 522 (S.D.N.Y.1978).

7. *Doe v. Lally*, 467 F.Supp. 1339 (D.Md.1979), (homosexual rape of prisoner); *Glover v. Johnson*, 85 F.R.D. 1 (E.D.Mich.1977), (prison inmates' fear of retaliation for participating in lawsuit).

8. *Doe v. Chafee*, 355 F.Supp. 112 (N.D.Cal. 1973).

9. *Doe v. McConn*, 489 F.Supp. 76 (S.D.Tex. 1980).

10. *Doe v. Carleson*, 356 F.Supp. 753 (N.D.Cal. 1973); *Doe v. Lavine*, 347 F.Supp. 357 (S.D.N.Y.1972); *Doe v. Swank*, 332 F.Supp. 61 (N.D. Ill.), aff'd sub nom. *Weaver v. Doe*, 404 U.S. 987, 92 S.Ct. 537, 30 L.Ed.2d 539 (1971); *Doe v. Hursh*, 337 F.Supp. 614 (D.Minn.1970); *Doe v. Shapiro*, 302 F.Supp. 761 (D.Conn.1969), appeal dismissed, 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970).

the case at bench in that use of controlled substances bears an element of stigmatization not present here.

■ In the present case, plaintiffs' contention that complying with an unlawfully administered draft registration will indelibly connect their names to the draft via disclosure of their identities in this litigation cannot stand in light. of strong countervailing interests.

■ It is axiomatic that lawsuits are public events and that the public has a legitimate interest in knowing the facts involved, including the identities of the parties.[11] A more technical consideration for disfavoring fictitious pleading involves the potential inability to fix *res judicata*.[12] The defendant also has a strong interest in knowing who is suing him.

Plaintiffs argue they should be allowed to proceed anonymously because they fear retaliatory conduct or other reprisals which may jeopardize their attempts to obtain conscientious objector status in the future. This feared retaliation is both speculative and prospective. Should the plaintiffs later be denied conscientious objector status due to their participation in this lawsuit, their remedy will be to bring an action at that time.[13]

The court fails to see what real injury would inure to plaintiffs by proceeding under their own names. If plaintiffs reveal their identities in this lawsuit and prevail on the merits, their names will be expunged from the Selective Service records and their only connection with the draft would be as victors in this action.[14] On the other hand, if they lose on the merits, the issue before the court would become moot. In either eventuality, the public's right to know would be protected and plaintiffs will have suffered no discernible harm.

■ A plaintiff should be permitted to proceed anonymously in cases where a substantial privacy interest is involved. The most compelling situations involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity.[15] That the plaintiff may suffer some embarrassment or economic harm is not enough.[16] There must be a strong social interest in concealing the identity of the plaintiff.[17] By balancing the need to maintain individual privacy rights against the right of the public and defend-

11. *Doe v. Deschamps*, 64 F.R.D. 652 (D.Mont. 1974); *see also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492–493, 95 S.Ct. 1029, 1044–1045, 43 L.Ed.2d 328 (1975) in the context of First Amendment freedom of the press.

12. *Roe v. Ingraham*, 364 F.Supp. 536, 541 n.7 (S.D.N.Y.1973).

13. The "case or controversy" limitation of Article III of the Constitution "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–1926, 48 L.Ed.2d 450 (1976).

14. Although plaintiffs have offered to reveal their names to the court *in camera* and proceed unnamed as they wish, this approach would not address the issue of whether they have a *right* to do so under the circumstances of this case.

15. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), in which the Supreme Court established that it might accept as true Mary Doe's existence and pregnant state on the date in question, despite her use of a pseudonym. The court takes it on faith by the representations of plaintiffs' attorneys that these three men actually exist, and each is described in the complaint as a real person.

16. *See Southern Methodist University Assn. v. Wynne and Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979), in which an association of female law students brought a Title VII action against a Dallas law firm for allegedly discriminating against women in its hiring practices. The Fifth Circuit upheld the district court's refusal to permit certain female lawyers wishing to intervene to proceed anonymously as there was neither an express congressional grant of right or "compelling need to protect privacy in a very private matter."

17. *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1975), *cert. denied*, 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979).

ants to know all the facts surrounding judicial proceedings, this court has concluded that the plaintiffs' alleged privacy interests do not outweigh the public nature of the American courts of law.

## SUA SPONTE DISMISSAL

 While authority of the court to dismiss a case *sua sponte* is not expressly lodged in the Federal Rules of Civil Procedure [18], it is within the "inherent power" of the court to take such action under the proper circumstances.[19] This court has both the duty and the right [20] to ensure compliance with the Federal Rules and to take action necessary to achieve the orderly and expeditious disposition of cases.[21]

The action taken in this matter is considered to be substantially equivalent to a motion to dismiss under Fed.R.Civ.P. 41(b). As noted earlier, although the issue of Doe pleading initially arose during a status conference, the parties had an opportunity to fully address this particular issue before the court. As pointed out by the court in *Bierman v. Tampa Electric Co.*, 604 F.2d 929 at 930 (5th Cir. 1979):

> [D]ismissal [*sua sponte*] works no greater hardship on a plaintiff than one ordered on a defendant's motion. In a dismissal on a party's motion, plaintiff has an opportunity to object. In a dismissal *sua sponte*, plaintiff can seek reinstatement or can appeal the dismissal as an abuse of discretion.

 This court has carefully considered each of the arguments raised by plaintiffs at the status conference with respect to their desire to proceed anonymously. None of the arguments presented, in the context of the facts of this case, are sufficient to justify non-compliance with the Federal Rules of Civil Procedure, particularly in light of the policies underlying Rule 10. In recognition, however, of the drastic nature of dismissal under Rule 41(b) [22], whether raised by motion or otherwise, this court will order dismissal without prejudice and with leave to amend.[23]

Accordingly, IT IS HEREBY ORDERED that this case is dismissed without prejudice with leave to amend within 30 days to include the true names of the parties in the complaint in compliance with Rule 10 of the Federal Rules of Civil Procedure.

---

**18.** Fed.R.Civ.P. 41(b) provides in part: "Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action.... Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule ... operates as an adjudication upon the merits."

**19.** *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

**20.** See, e. g., Fed.R.Civ.P. 83 which authorizes district courts to promulgate local rules and states in the last sentence: "In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules."

**21.** *States Steamship Co. v. Philippine Air Lines,* 426 F.2d 803 (9th Cir. 1970).

**22.** *See Industrial Building Materials, Inc. v. Interchemical Corporation,* 437 F.2d 1336, 1338 (9th Cir. 1971).

**23.** *Cf. Walden v. Elrod,* 72 F.R.D. 5 (W.D.Okla. 1976).