Mary GLOVER et al., Plaintiffs,

v.

Perry JOHNSON, as Director of Michigan Department of Corrections, et al., Defendants.

Charmaine L. CORNISH and Georgia D. Manzie, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Perry JOHNSON, Director of the Michigan Department of Corrections, Lansing, Michigan; and Gloria J. Richardson, Superintendent, Huron Valley Women's Facility, Ypsilanti, Michigan, jointly and severally, Defendants.

Civ. A. Nos. 77–71229, 77–72557.

United States District Court, E. D. Michigan, S. D.

April 6, 1981.

available to the State's women prisoners were substantially inferior to those available to the State's male prisoners; that implementation of a legal studies course was necessary to guarantee the women inmates' right of access to the courts; and that the use of the Kalamazoo County Jail for housing female prisoners is proscribed by state statute and regulation. On October 26, 1979, I entered an order setting forth in general terms the remedies the State would be required to implement and requiring it to submit for court approval its plan detailing the steps to be taken to comply with the Order. Following submission of the State's plan on January 2, 1980, and of the response filed by plaintiffs, conferences were held to work out an acceptable program with input from both sides and other resource persons.

This Final Order is the culmination of lengthy negotiations, and its provisions have been arrived at by agreement of counsel for the parties. It is approved by the Court after notice and an opportunity for hearing has been extended to all members of the class. It incorporates various interim orders. This Final Order does not address, however, the remedy to be provided for in a vocational testing and counseling program; it is being presently developed and, after approval by the Court, will be incorporated in a supplemental final order. Similarly, this Final Order does not resolve the issues of individual damages for plaintiffs Cornish and Manzie, and the award of attorneys' fees for plaintiffs' counsel, and reconsideration of the work pass program; these matters, as they are resolved, will be incorporated likewise in a supplemental final order.

The Court retains jurisdiction until it is satisfied that the terms of the Orders have been complied with in all respects. Each heading, hereafter, relates to a specific remedy:

Georgia Manzie, in pro. per.

Judith Magid, Wayne County Neighborhood Legal Services, Detroit, Mich., Charlene Snow, Michigan Legal Services, Detroit, Mich., for plaintiffs.

Keith D. Roberts, Asst. Atty. Gen., Corrections Div., Lansing, Mich., for defendants.

## FINAL ORDER

FEIKENS, Chief Judge.

In an opinion issued October 17, 1979, I found that the rehabilitation opportunities

### I. *Associate Degree Program*

■ IT IS ORDERED that the State provide a post-secondary education program comparable to that available to male inmates to as many of the qualified inmates

at the Huron Valley Women's Facility (Huron Valley) as desire to participate;

that the course selection be made by officials of the Department of Corrections and representatives of the cooperating educational institutions in order to provide a systematic and coherent course package which, when successfully completed, culminates in the receipt of an Associate's Degree;

that the Associate Degree be such that it will enable entry into a four-year college program;

that the State make such efforts as are required to eliminate scheduling conflicts between courses, provide all required course materials, including textbooks, reference books and any other materials necessary to fulfill the course requirements in cooperation with the educational institution involved, and furnish transportation for qualified inmates attending courses taught at cooperating educational institutions, consistent with the reasonable requirements of security and cost; and otherwise to take such action as will promote the achievement of the goal of parity of educational programming offered male and female prisoners;

that if any course deficiencies remain after a student, during her residence at Huron Valley Women's Facility, has completed all other courses available at the facility towards one of the Associate degrees offered, the Department will transport women who meet the qualifications in the Huron Valley Women's Facility Policy Directive for "off-grounds privileges," which are set forth at Section VIII, *infra*, to the campus of Washtenaw Community College for the purpose of taking required courses not available at the facility; and further, that if several students indicate to the College Coordinator at Huron Valley Women's Facility an interest in taking a particular course available only at the campus of Washtenaw Community College, and the scheduling of that course is compatible with the availability of security personnel, then those women will also be transported to the campus of Washtenaw Community College, provided they meet the above-stated requisite security classification;

that defendants will be responsible for assuring that an academic counselor from Washtenaw Community College, or any other community college providing classes at Huron Valley, be available to inmates several days prior to registration for each semester. At the beginning of each new term, defendants will be responsible for assuring that Washtenaw Community College formalize and publish a list of the courses necessary to obtain an Associate's degree in the areas of study which are available to the women at Huron Valley Women's Facility.

## II. *Bachelor Degree*

IT IS ORDERED that the State, while not obligated to provide a four-year baccalaureate program at Huron Valley Women's Facility, shall assist and cooperate in the establishment and operation (including the provision of space) of a baccalaureate program which any four-year college desires to offer women inmates; and in no way shall that assistance be less than that provided to colleges offering baccalaureate programs at men's prisons.

## III. *Apprenticeship*

The Standards of Apprenticeship compiled by the Huron Valley Women's Facility Multi-Crafts Joint Apprenticeship and Training Committee ("Committee"), which were put into written form and agreed to on October 2, 1980, are hereby incorporated. This document is to be registered with the United States Department of Labor Bureau of Apprenticeship and Training within three months of the signing of this Order.

IT IS FURTHER ORDERED that quarterly progress reports on the activities of the Committee are to be submitted to the Court and counsel for plaintiffs for five years from the entry of this Order or until such time as the Court finds defendants are in compliance with this Order, and that an apprenticeship program with women inmates apprenticed to each of the five crafts set forth in the above-mentioned document

shall be operational within six months of this Order.

IT IS FURTHER ORDERED that defendants shall take whatever steps are necessary to ensure compliance with the apprenticeship standards adopted.

IT IS FURTHER ORDERED that the Department immediately undertake the responsibility of informing prisoners of the nature of apprenticeship, how to become involved in the Apprenticeship Program at Huron Valley Women's Facility, and what trades are being apprenticed at the prison. This effort is to be done in conjunction with the Joint Apprenticeship Committee.

## IV. *Prison Industry*

■ A. The Interim Order of this Court regarding prison industries, issued April 8, 1980, is hereby incorporated. It requires that:

1. The Department of Corrections shall establish a prison industry at Huron Valley Women's Facility by January 1982.

    a. Such industry shall include the manufacture of license plate tabs and chair cushions.

    b. Development of these two industries is not to preclude the expansion of prison industry at Huron Valley Women's Facility into other areas which include apprenticeable trades.

    c. The establishment of these two prison industries shall not affect the implementation of an apprenticeship program at Huron Valley Women's Facility.

■ B. The Interim Order of this Court on the subject of interim industry wages, issued September 8, 1980, is hereby incorporated. It requires that:

1. As interim relief, the Defendants will pay a sum of money, designated as interim industry wages, into a trust fund to be established for the benefit of women prisoners in Michigan.

2. The use of the trust is to be outlined in a future Order to this Court.

3. The formula for determining the amount of money paid into the trust will be as follows:

    a. A base wage of $2.85 per day will be used. That is derived from subtracting the average prison wage of 65 cents per day from the $3.50 per day wage paid to workers in the license plate tab industry.

    b. Payments are to be retroactive to January 1980, and continue at least 8 quarters, or until such time as a full industry program is operating at Huron Valley.

    c. Payments are to be based on the wages that would have been earned by thirty (30) women prisoners if an industry program had been operating at Huron Valley.

    d. The amount per quarter equals five thousand five hundred and fifty-seven dollars and fifty cents. ($5,557.50).

    e. In addition to this base amount, bonuses shall be paid for the thirty positions in the same manner as they are paid to men in the industry program.

    f. Defendants are to make a payment covering 3 quarters so that the trust fund can be established.

C. The Interim Order of this Court establishing a trust fund for women prisoners in Michigan, issued September 29, 1980, is hereby incorporated. It requires that:

1. A trust fund for the benefit of women prisoners in Michigan is to be established as set forth in the attached instrument. [Appendix A].

2. Defendants are to make payments into the trust fund in the manner designated in the Interim Order of this Court, dated September 5, 1980.

## V. *Wages*

■ IT IS ORDERED that the wage scale currently in effect throughout the Department of Corrections be reviewed to ensure that departmental wage policy is applied fairly to women inmates whose job functions are comparable to those per-

formed by male prisoners at similarly-sized institutions; and

IT IS FURTHER ORDERED that defendants' method of standardization, as set forth in the job evaluation document prepared for this case, is adopted, and that such wage standardization be completed within three months of this Order.

## VI. Access to the Courts

### A. Law Library

The Huron Valley Women's Facility Law Library currently meets the standards for adequacy mandated by *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

█ IT IS ORDERED that those volumes in the library shall be regularly supplemented and replaced periodically as required to keep them up to date. Any missing volumes shall be replaced immediately.

### B. Paralegal Training

█ The Department of Corrections shall continue the program of paralegal training at Huron Valley Women's Facility in accordance with the terms of the December, 1979 proposal by James S. Wilber, Director of Prison Legal Services of Michigan, Inc., which proposal was submitted to the Court by defendants on December 27, 1979 in conjunction with Part G of defendants' "Plan and Schedule".

In the October 17, 1979 Opinion and the October 26, 1979 Order, the Court set forth its primary objective of providing a pool of adequately trained inmate assistants among the female prison population at Huron Valley Women's Facility who will be able to provide legal assistance to themselves and others in areas where Prison Legal Services is precluded from participating.

IT IS ORDERED that the Michigan Department of Corrections shall continue, provided eligible and interested female prisoners are available for participation, the paralegal training program at Huron Valley Women's Facility for such period of time necessary to accomplish this primary objective. The course shall be structured so that eighty per cent of the course participants in the class shall be inmates with more than two years of incarceration remaining before their earliest release date, so as to ensure that inmates participating in the class will have time remaining on their sentences during which they can help other inmates.

A hearing to consider the individual plaintiffs' requests for damages will be conducted at a time and date set by the Court.

## VII. Camp Pontiac and Kalamazoo County Jail

█ A. The Interim Order of this Court entered March 7, 1980, with modifications, is hereby incorporated. It required that:

1. As interim relief, Defendants will transfer all women at Kalamazoo County Jail to Camp Pontiac or Huron Valley within one hundred twenty-five (125) days from the date of entry of this Order.

2. Within one hundred twenty (120) days from the date of entry of this Order, Defendants will clean, paint, refurbish and open the camp, and install single beds to replace the existing bunk beds.

3. The female prisoners to be housed at Camp Pontiac will not exceed seventy-one (71) and will be selected in the following manner:

a. First priority is women who are employees or trainees at the Plymouth Center for Human Development.

b. Second priority is for those 10–15 women who will make up the camp crew, that is, those who perform various routine clerical and maintenance functions for the camp.

c. All of those not occupied as in a. and b. above would be assigned to conservation crews for the Department of Natural Resources, Department of Corrections, or to similar work for other state agencies, such as the Department of Transportation, should such work become available.

4. The women at Huron Valley will be advised of the availability of transfer to Camp Pontiac, and slots will be filled with volunteers as much as possible, giv-

ing priority to those who volunteer *and* are involved in the Plymouth Center project. If sufficient qualified volunteers cannot be found to fill the seventy-one (71) beds available, the classification committee at Huron Valley will select others who are eligible for camp residency, and they will be required to transfer to Camp Pontiac.

5. The Defendants will return all state prisoners residing at the Kalamazoo County Jail to Huron Valley Women's Facility within five (5) days after the women prisoners have been moved into the present Camp Pontiac, that is, within one hundred twenty-five (125) days from the entry of this Order, and will not thereafter make use of Kalamazoo County Jail.

6. Once the new Camp Pontiac, to be located adjacent to the existing one, has been constructed and is ready for occupancy, which will be on or before July 10, 1981, the female prisoners in the present Camp Pontiac will be moved to the new camp.

B. IT IS FURTHER ORDERED that women inmates shall be eligible for transfer to Camp Pontiac according to the applicable Department of Corrections Policy Directives regarding inmate classifications;

that educational programs shall be available to women inmates at Camp Pontiac on the same basis as available at camps housing male inmates;

that when the new Camp Pontiac, to be located adjacent to the existing one, has been constructed and is ready for occupancy, which will be on or before July 10, 1981, female prisoners in the present Camp Pontiac will be moved to the new camp.

VIII. *Off-Grounds Privileges*

■ IT IS ORDERED that to effectuate the terms of the Opinion regarding educational and vocational programs, with a recognition that the most cost-efficient means of doing this is by providing programs off-grounds, inmates at Huron Valley Women's Facility be permitted to participate in off-grounds programs in accordance with the following criteria:

A. An inmate who is serving a non-mandatory life sentence for other than first-degree murder, or a sentence with a mandatory calendar minimum term of years less than 15, shall be eligible to participate in an off-grounds educational or vocational program under custodial escort if she meets the following qualifications:

1. has been incarcerated for a period of two years;

2. has no charges pending for sexual assault or attempted sexual assault by force or threat of force, robbery, kidnapping or murder;

3. has not been found guilty of misconduct designated by policy as non-bondable during the preceding year. (Misconduct while in community status may be excepted);

4. has not been found guilty of a major misconduct during the preceding ninety days; and

5. is not serving an escape sentence and has not escaped within the past three years from a county jail or an adult or youth facility.

B. An inmate who is serving a mandatory life sentence, or a sentence with a minimum calendar term in excess of 15 years, shall be eligible to participate in off-grounds educational or vocational programs under custodial escort if she meets the following qualifications:

1. has been incarcerated for a period of five years; and

2. meets the qualifications of A., (2–5).

C. An inmate not within the sentence classification listed in "A." or "B." shall be eligible to participate in an off-grounds educational or vocational program under custodial escort if she meets the following qualifications:

1. has not been found guilty of misconduct designated by policy as non-bondable during the past one year. (Misconduct while in community status may be excepted);

2. has not been found guilty of a major misconduct during the preceding ninety days;

3. is not serving an escape sentence and has not escaped within the past three years from a county jail or an adult or youth facility; and

4. has no detainer (for felony prosecution or felony sentence) with release date later than her current SGT minimum date.

## APPENDIX A

### TRUST FUND FOR THE BENEFIT OF WOMEN PRISONERS UNDER THE JURISDICTION OF THE MICHIGAN DEPARTMENT OF CORRECTIONS

THIS TRUST has been created pursuant to the Interim Court Order entered *Sept. 26, 1980* in Civil Action # 77–1229, a class action by Mary Glover, et al, Plaintiffs, against Perry Johnson, as Director of Michigan Department of Corrections, et al, for injunctive and declaratory relief.

### PARAGRAPH I

*TRUST FUND:*

Pursuant to the Interim Court Order issued on September 5, 1980 by Judge John Feikens, (1) the Michigan Department of Corrections does hereby assign, transfer and convey and deliver to the Trustees herein after named, property consisting of cash in the projected total amount of $45,942.00, to be paid to said Trustees in the manner set forth in the Interim Order entered on September 5, 1980.

(2) The Michigan Department of Corrections does hereby assign, convey and will transfer and deliver to said Trustees such bonus payments as are required to be paid under Court Order in addition to the amount described in Subparagraph (1) above.

(3) The property described in Subparagraphs (1) and (2) above shall be held and managed by the Trustees, in trust, for the uses and purposes and upon the terms and conditions established by the Interim Order entered on *Sept. 26, 1980* as hereinafter set forth.

### PARAGRAPH II

*PURPOSE OF TRUST:*

The purposes of this Trust are to devote and apply the property by this instrument vested in the Trustees and income derived therefrom exclusively for educational and charitable purposes within the United States, provided, however, that no part of this trust fund shall inure to the benefit of any private shareholder or individual, and no part of the direct or indirect activities of this trust shall consist of carrying on propaganda, or otherwise attempting to influence legislation or of participating in, or intervening in (including the publication or distribution of statements), any political campaign on behalf of any candidate for public office. Notwithstanding any other provision hereof, this trust shall not conduct or carry on any activities not permitted to be conducted or carried on by an organization exempt under Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended, or by an organization contributions to which are deductible under Section 170(c)(2) of such Code and Regulations as they now exist or as they may hereafter be amended.

### PARAGRAPH III

*USE OF TRUST FUND*

The Trustees shall have the power and authority and are directed to distribute from time to time exclusively for education and charitable purposes each year such amounts of income or principal of this Trust Fund as they in their discretion may appoint, order or direct. The Court Order, pursuant to which this Trust is created, has designated some specific educational and charitable expenditures which are to be made to directly further the educational and charitable purposes for which this Trust is created and which are hereinafter set forth.

a. Purchase of legal publications to augment and update current library facilities but in no way to take the place of the duties of the State Department of Corrections to maintain adequate Legal Library facilities under current department policy.

b. Purchase of or rental of an electric typewriter for preparation of legal documents and for correspondence related thereto.

c. Purchase of or rental of copying facilities and materials for use in conjunction with the use of the Legal Library facilities.

d. Payment of mileage charges and charges for maintenance of prisoner security, to enable prisoners who are otherwise unable to afford such expenses to use compassionate passes granted to them for the purpose of "bedside visitation of critically ill immediate relatives, or attending the funeral of immediate relatives" at a rate to be paid pursuant to a schedule agreed to by the Department of Corrections.

e. Purchase of recreational equipment to enable prisoners to participate in some recreational activity.

## PARAGRAPH IV

### TRUSTEES

Pursuant to the Interim Court Order issued on September 26, 1980 by Judge John Feikens, Launa Wakenhut, Georgia Manzie, one representative of University of Detroit Law School Women's Group, two representatives from the prison population are appointed Trustees.

The Trustees shall have the power and authority, within its discretion and exercise of judgment, to sell and dispose of any of the bonds, securities, property, or assets transferred to the Trust by this instrument, or subsequently acquired, and may invest and reinvest the income or funds thereby obtained, or the income from time to time accumulated, in any other bonds, securities, property, or assets which in their discretion they may determine is wise and proper. The investments and reinvestments made by the Trustees shall be limited to those which are commonly known as those in which trust funds are authorized to be invested under the laws of the State of Michigan. The Trustees shall not be responsible for any loss arising out of any investments made by them in the exercise of their judgment and discretion. The Trustees shall have power and authority to give a proxy to anyone selected by the Trustees to vote any of the shares and securities held in this trust at any meeting of any corporation having issued such shares of securities.

In addition, the Trustees, and their successors in the trust, shall have and exercise, subject to the limitations herein provided, all the rights and powers incident to the ownership of all the properties, real and personal, held by them from time to time belonging to this trust, as fully and absolutely as though they were the owners of such properties in their own right. The Trustees and their successors shall have power to deposit the moneys and securities belonging to this trust from time to time in such banks and safe deposits and trusts companies as they may from time to time select.

Notwithstanding any other provisions hereof, no power or authority shall be exercised by the Trustees in any manner or for any purpose whatsoever which may jeopardize the status of the trust as an exempt organization under Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended; nor shall the Trustees engage in any act of self-dealing as defined in Section 4941(d) of the Revenue Code of 1954, or corresponding provisions of any subsequent federal tax laws; nor retain any excess business holdings as defined in Section 4943(c) of the Internal Revenue Code of 1954, or corresponding provisions of any subsequent federal tax laws; nor make any investments in such manner as to incur tax liability under Section 4944 of the Internal Revenue Code of 1954, or corresponding provisions of any subsequent federal tax laws; nor make any taxable expenditures as defined in Section 4945(d) of the Internal Revenue Code of 1954, or corresponding provisions of any subsequent federal tax laws.

The Trustees shall furnish an annual accounting to the Court if so requested by the Court.

Any successor trustee shall be appointed by the majority of the remaining Trustees, provided that Launa Wakenhut or her successor shall have sole custody of the assets of the trust.

## PARAGRAPH V

*TERMINATION*

This Trust shall terminate at the earlier of

(a) exhaustion of income and principal pursuant to the uses and purposes for which this Trust is established;

(b) on September 26, 1990, ten (10) years from the date of the Final Court Order.

Any funds remaining on September 26, 1990, if the Trust has not earlier terminated, shall be paid over free and discharged of any trusts to the Resident Benefit Fund at Huron Valley Women's Facility to be expended for the purposes for which the Benefit Fund was established.