**Mary GLOVER, et al., Plaintiffs,**

v.

**Perry JOHNSON, Director, Michigan Department of Corrections, et al., Defendants.**

Civ. A. No. 77–71229.

United States District Court, E.D. Michigan, S.D.

April 17, 1987.

Order of Amendment April 21, 1987.

Charlene Snow, Deborah LaBelle, Detroit, Mich., for plaintiffs.

Susan Harris, Michigan Asst. Atty. Gen., Detroit, Mich., for defendants.

MEMORANDUM OPINION
AND ORDER

FEIKENS, District Judge.

Female inmates in the custody of the Michigan Department of Corrections ("Department") commenced this suit on May 19, 1977 and demanded that defendants, members of the Michigan Corrections Commission ("Commission"), provide them with ed-

ucational and vocational opportunities comparable to those provided male inmates. On December 23, 1977, I certified the action "on behalf of all female inmates in Michigan." *Glover v. Johnson*, 85 F.R.D. 1, 2 (E.D.Mich.1977). After a bench trial, I ruled that defendants violated the Equal Protection Clause of the Fourteenth Amendment and I ordered defendants to provide educational programs to female inmates. *Glover v. Johnson*, 478 F.Supp. 1075, 1101–1102 (E.D.Mich.1979) ("*Glover I*"). After extensive consultation with counsel and with counsels' consent, in 1981 I entered final relief in *Glover v. Johnson*, 510 F.Supp. 1019 (E.D.Mich.1981) ("*Glover II*"). Since then, despite my best efforts to prod and cajole defendants into compliance, and despite several contempt proceedings, defendants persist through bureaucratic inertia, intransigence, and resistance in denying female inmates equal educational opportunities.

The immediate controversy involves defendants' failure to provide female inmates with a sustained and coherent post-secondary degree program. Both *Glover I* and *Glover II* required that defendants provide "a systematic and coherent course package which, when successfully completed, culminates in the receipt of an Associate's Degree ... that ... will enable entry into a four-year college program." *Glover II*, 510 F.Supp. at 1021. *See also Glover I*, 1083–1085, 1102. Defendants have failed to comply with my directives. Qualified female inmates have neither adequate on-grounds nor off-grounds educational programs. Course sequences do not lead to a meaningful Associate Degree that creates realistic employment prospects or additional educational options.

Neither *Glover I* nor *Glover II* required that defendants establish a baccalaureate program for female inmates because defendant Perry Johnson ("Johnson"), Director of the Department, had testified that no such programs would be offered to male inmates after he implemented budget cuts. 478 F.Supp. at 1085, 1102; 510 F.Supp. at 1021. However, Spring Arbor College has offered baccalaureate courses to male inmates every year from 1980 to the present. The program received some State money each year, and in 1984 it won a separate line item in the State budget. Rudolf Stahlberg, Assistant Deputy Director of the Department, and Keith Roberts, Assistant Attorney General, correctly informed Johnson in writing on August 27 and September 13, 1984 that my orders required comparable programs for female inmates. Defendants have not implemented such programs.

Plaintiffs raised these matters in their January 22, 1986 petition asking that I find defendants in contempt and impose sanctions.[1] I conducted ten days of hearings,[2] took the matter under advisement, and initiated still another round of negotiations aimed at achieving compliance. These proceedings prompted defendants to arrange with Spring Arbor College for two baccalaureate courses commencing October 21, 1986. On October 16, 1986, plaintiffs filed papers claiming that defendants intended to offer these courses only at Huron Valley Women's Facility ("Huron Valley"), and that qualified female inmates residing in Florence Crane Correctional Facility ("Crane")[3] who wanted to enroll in these courses would have to transfer to the overcrowded and higher security Huron Valley Prison. After a hearing on October 20, 1986, I granted preliminary relief ordering defendants to provide the courses both at

1. The petition charged not only defendants' failure to provide comparable educational programming but also their failure to comply with other aspects of my orders.

2. June 10, July 11, 21–25, 28–29, and 31, 1986. I note that the original trial lasted only ten days. *Glover I*, 478 F.Supp. at 1076.

3. Crane houses exclusively female inmates and opened on April 15, 1985. Defendants further demonstrate their intransigence with the specious claim that the constitutional requirement of parity does not apply at Crane because it opened after my rulings in *Glover I* and *Glover II*. Although many of my orders specifically mention the women's facilities operating at the time of the orders, this case is and always has been an action "on behalf of all female inmates in Michigan." *Glover*, 85 F.R.D. at 2.

Huron Valley and at Crane beginning October 21, 1986. Defendants flouted this direct order and did not begin courses at Crane.[4]

Defendants' counsel appeared on October 31, 1986 in response to my order to explain why courses had not begun. Characteristically, defendants attempted to obfuscate the issue by substituting counsel who had not previously handled the case [5]. I did not receive an adequate explanation and ordered an evidentiary hearing for November 6, 1986. There are still no baccalaureate courses at Crane.

I provide this detailed chronology to explain my conclusion that ordinary contempt penalties will not bring compliance.[6] Only an Administrator, appointed and supervised by me, can design and implement the educational programs required by my orders. Chief Judge Johnson reached the same conclusion in litigation challenging the conditions of confinement in Alabama state prisons:

> Time does not stand still, but the Board of Corrections and the Alabama Prison System have for six years. Their time has now run out. The Court can no longer brook non-compliance with the clear command of the Constitution, represented by the orders of the Court in this case.... It is clear that the Board of Corrections is incapable of effective leadership.... The extraordinary circumstances of this case dictate that the only alternative to non-compliance with the Court's orders is the appointment of a receiver for the Alabama prisons.... Further injunctions or contempt proceedings will not accomplish the task of compliance; such remedies promise only confrontation and delay. When the usual remedies are inadequate, a court is justified in resorting to a receivership, particularly when it acts in aid of an outstanding injunction.

*Newman v. State of Alabama,* 466 F.Supp. 628, 635 (M.D.Ala.1979). School desegregation in Boston also required an Administrator appointed by the court:

> A district court's power to fashion and effectuate desegregation decrees is broad and flexible....
>
>     ....
>
> ... The more usual remedies—contempt proceedings and further injunctions—were plainly not very promising, as they invited further confrontation and delay; and when the usual remedies are inadequate, a court of equity is justified, particularly in aid of an outstanding injunction, in turning to less common ones, such as a receivership, to get the job done.

*Morgan v. McDonough,* 540 F.2d 527, 533 (1st Cir.1976), *cert. denied,* 429 U.S. 1042, 97 S.Ct. 743, 50 L.Ed.2d 755 (1977).

I recognize that State "authorities have the primary responsibility for ... implementation of the governing constitutional principles." *Brown v. Board of Education,* 349 U.S. 294, 299, 75 S.Ct. 753, 755, 99 L.Ed. 1083 (1955). But when these "authorities fail in their affirmative obligations ... judicial authority may be invoked." *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 15, 91 S.Ct. 1267, 1275, 28 L.Ed.2d 554 (1971). "[F]ederal courts are not reduced to issuing injunctions and hoping for compliance. Once issued, an injunction may be enforced." *Hutto v. Finney,* 437 U.S. 678, 690, 98 S.Ct. 2565, 2753, 57 L.Ed.2d 522 (1978).

Accordingly, IT IS ORDERED that Dr. Richard Meisler be appointed Administrator to design and implement educational programs for female inmates on a parity with male inmates. The Administrator shall have full power, subject to the supervision of the Court, to contract for edu-

---

**4.** Plaintiffs brought the violation to my attention in their October 29, 1986 petition asking that I hold defendants in contempt.

**5.** After plaintiffs filed their January 22, 1986 petition to hold defendants in contempt, defendants attempted to substitute counsel without providing me advance notice or seeking my permission. This is still more evidence of the low esteem in which defendants hold this Court.

**6.** I may nevertheless fine or imprison any defendant responsible for failing to implement my order.

**624**

cational services with educational institutions necessary to achieve parity.[7]

IT IS FURTHER ORDERED that defendants shall not circumvent this order by reducing educational programs presently provided male inmates.

IT IS FURTHER ORDERED that defendants bear the cost of the plans designed and implemented by the Administrator.

IT IS FURTHER ORDERED that any State Officers necessary to provide complete relief pursuant to this order be joined as party defendants.

---

**7.** The Administrator is not required to continue programs with Spring Arbor College if such are

no longer feasible.