Mary GLOVER; Lynda Gates; Jimmie Ann Brown; Mannetta Gant; Jacalyn M. Settles, and several Jane Does on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

Perry JOHNSON, Director, Michigan Department of Corrections; Florence R. Crane; G. Robert Cotton; Thomas K. Eardley, Jr.; B. James George, Jr.; Duane L. Waters, Michigan Corrections Commission; William Kime, Director Bureau of Programs; Robert Brown, Jr., Director, Bureau of Correctional Facilities; Frank Beetham, Director, Bureau of Prison Industries; Richard Nelson, Director, Bureau of Field Service; Gloria Richardson, Superintendent, Huron Valley Women's Facility; Dorothy Costen, Director of Treatment, Huron Valley Women's Facility; and Clyde Graven, Sheriff, Kalamazoo County, Individually, and in their official capacities, Defendants–Appellants.

Nos. 86–2125, 87–1466.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 24, 1987.

Decided Aug. 22, 1988.

Susan A. Harris (Lead Counsel) (argued), Asst. Atty. Gen., Detroit, Mich., Keith D. Roberts, Lansing, Mich., for defendants-appellants in No. 87–2125.

Charlene Snow (argued), Deborah LaBelle, Detroit, Mich., for plaintiffs-appellees in No. 87–2125.

Frank J. Kelley, Atty. Gen., Corrections Div., Susan Harris (argued), Asst. Atty. Gen., Corrections Div., Lansing, Mich., for defendants-appellants in No. 87–1466.

Charlene Snow, Deborah LaBelle (argued), Detroit, Mich., for plaintiffs-appellees in No. 87–1466.

Richard Meisler, for University of Mich.

Before ENGEL, Chief Judge *, and MERRITT and RYAN, Circuit Judges.

RYAN, Circuit Judge.

This is an appeal from two orders entered in a class action brought by female inmates of the Michigan prison system, claiming the denial of equal protection of the law in the provision of educational op-

---

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

portunities to female inmates in the Michigan prison system. The orders were separately appealed and are consolidated for review.

In the first of the two orders appealed from (86–2125), the district court:

(a) Ordered defendants to "provide a four-year degree program" leading to a baccalaureate degree for four named members of the plaintiff class residing at the Florence Crane Correctional Facility.

(b) Enjoined defendants from transferring any female inmates from the Crane Facility to the Huron Valley Women's Facility for the purpose of enabling female inmates "to receive four-year degree programs"; and

(c) Ordered defendant to "continue in its efforts to offer four-year degree programs to all other interested prisoners incarcerated at the Florence Crane Facility."

In the second order appealed from (87–1466) 659 F.Supp. 621 (1987), the district court appointed an administrator to "design and implement educational programs for female inmates on a parity with male inmates" in the Michigan correctional system.

The orders are challenged on a number of grounds, principally as being beyond the district court's proper authority given the state of the record, considerations of comity and federalism, and the requirements of Fed.R.Civ.P. 52(a).

We do not reach the merits of the substantive legal and equitable challenges to the district court's orders. Instead, we vacate the preliminary injunction because it is not supported by minimally sufficient findings of fact, and we set aside the order appointing the administrator because we are not presented with an evidentiary record demonstrating sufficiently compelling justification, given considerations of comity and federalism, for the extreme intrusiveness into the constitutional prerogatives of a state agency that results from the order appointing an administrator.

I.

This litigation has been pending for more than ten years. It is unnecessary, and probably impossible, to fully and accurately detail the entire history of this vigorously, sometimes bitterly, contested controversy. Nevertheless, a brief review of that portion of the litigation relevant to the orders appealed from is necessary to our decision.[1]

In May of 1977, plaintiffs filed a class action in the United States District Court for the Eastern District of Michigan alleging that male inmates at Michigan prisons were afforded education and training opportunities, including a two-year associate degree and a four-year baccalaureate degree program, not afforded to female inmates, in violation of the equal protection clause of the fourteenth amendment of the federal Constitution. A number of other allegations of unfair discriminatory and disparate treatment were made that are not relevant to these appeals.

When the lawsuit was filed, female inmates in Michigan were housed only at the Huron Valley Women's Facility.[2] In October of 1979, the district court issued a lengthy and wide-ranging opinion and order which included highly detailed findings of fact. The court ordered, among other things, that "the State" provide to female inmates at the Huron Valley Women's Facility a two-year post-secondary education program leading to an associate's degree, comparable to the program then being offered to male inmates at the state prison of

---

**1.** Part of the problem in accurately detailing the facts of this case is that the parties disagree about them and, as our conclusions attest, the district court's orders do not include sufficiently detailed fact-finding resolving material differences in the parties' versions of the relevant events.

A reader interested in the genesis of the controversy and the district court's resolution of a number of issues presented in the early stages of the litigation should examine *Glover v. Johnson*, 478 F.Supp. 1075 (E.D.Mich.1979), and *Glover v. Johnson*, 510 F.Supp. 1019 (E.D.Mich. 1981).

**2.** Due to overcrowding, some inmates were temporarily held at the Kalamazoo County Jail on a rotating basis under contract with the county.

Southern Michigan (Jackson).[3] The district court's order did not specifically require that a four-year degree program be instituted for women inmates, although such a program was being offered for male inmates at Jackson. The order stated that the state "may encourage the development of such a program in whatever manner available in light of its overall responsibility for educational programming at the facility." *Glover v. Johnson*, 478 F.Supp. 1075, 1102 (E.D.Mich.1979) (*Glover I*).

In April 1981, the district court issued its "Final Order" which it described as having been "arrived at by agreement of counsel for the parties." *Glover v. Johnson*, 510 F.Supp. 1019, 1020 (E.D.Mich.1981) (*Glover II*). The court reiterated that comparable education programs for men and women were to be provided at the Huron Valley Women's Facility, and stated:

> [T]hat the State, while not obligated to provide a four-year baccalaureate program at Huron Valley Women's Facility, shall assist and cooperate in the establishment and operation (including the provision of space) of a baccalaureate program which any four-year college desires to offer women inmates; and in no way shall that assistance be less than that provided to colleges offering baccalaureate programs at men's prisons.

*Glover II*, 510 F.Supp. at 1021. The court required that the defendants file quarterly progress reports for five years "or until such time as the Court finds defendants are in compliance." *Id.* The court held status conferences with counsel for the parties in 1981, 1982, and 1984.

In April 1985, the Department of Corrections opened the Florence Crane Correctional Facility for Women at Coldwater, Michigan. During the next several months, approximately 340 women were transferred to Crane from the overcrowded Huron Valley Facility, including some inmates who had been eligible to participate in the third and fourth year baccalaureate program that had been offered intermit-

tently since 1980 at Huron Valley by Eastern Michigan University.

The parties sharply disagree about the facts relating to the availability of educational opportunities to inmates at Huron Valley, about the causes for the unavailability of education programs at Florence Crane, and about the defendant's efforts to comply with the district court's 1979 and 1981 orders. We are handicapped in determining whose version of the facts is correct because of the sparsity of an evidentiary record, and the absence of adequate factfinding by the district court. However, some facts necessary to an understanding of what we decide today appear to be incontrovertible.

Spring Arbor College, a private degree granting institution located not far from Jackson Prison, has provided a four-year degree program to male inmates at Jackson continuously since 1979. Indeed, it was the absence of a comparable program for women at Huron Valley that was one of the motivating causes for this lawsuit. Funding for the program at Jackson was provided mainly through federal funds in the form of PELL grants. Since 1984, Spring Arbor College also received state funds under a Michigan Department of Education program providing reimbursement to that school for degrees issued to Jackson Prison inmates. 1984 Mich.Pub.Acts 238 § 21(a). Eventually, because Spring Arbor College was conferring approximately forty bachelor degrees a year upon Jackson inmates, the college received an annual "straight line item" appropriation of $120,000 from the state of Michigan, representing the statutorily authorized $3,000 per graduate. Although the defendants provided no funds in support of the Spring Arbor program, they were, of course, aware of the funding and accommodated the class offerings at Jackson by providing classroom space and facilities and cooperatively arranging inmates' schedules. The defendants claim that no comparable edu-

**3.** The state of Michigan was not then and is not now a party to this litigation. The Department of Corrections, its director, and the individual members of the Michigan Corrections Commis-

sion, as well as a number of other prison officials, are sued "individually and in their official capacities."

cation programming was offered at any of the state's other male correctional institutions. The plaintiffs disagree and claim education programs were offered in at least one other correctional facility for men.

For one reason or another, no college or university has ever offered a regular four-year degree program at the Huron Valley Women's Facility, although one school provided three semesters of college classes at Huron Valley between 1980 and 1984. Plaintiffs attribute the absence of a regular and continuous baccalaureate program to the defendants' "intransigence" and "obduracy." Defendants attribute it to an absence of sufficient inmate interest and a lack of private, federal, or state funding.

In the spring of 1985, some baccalaureate program courses were offered at Huron Valley, paid for with funds authorized by defendant Perry Johnson, then Director of the Department of Corrections. No classes were offered at Huron Valley in the fall of 1985, due in part, apparently, to the fact that Eastern Michigan University had offered a number of courses in 1983 and had not been paid for its services. As a result, several student inmates had not received grades for credits earned in those courses. The problem was eventually rectified and the inmates received the credits they had earned.

No educational programs of any kind have ever been offered at the Florence Crane Facility. Defendants claim it is because there has been an insufficient showing of interest among the Crane inmates to meet the requirements of the two colleges whose services defendants have solicited, and who insist that at least fifteen students must register for any course offered in either the two-year associate degree or four-year baccalaureate programs. Plaintiffs contend that at least fifty women at Crane "were interested" in a community college program and that the only reason a four-year degree program is not offered at Crane is because the defendant simply refuses to provide it. Once again, the trial court has made no specific findings of fact about the matter.

In January 1986, impatient with the lack of progress toward compliance with the district court's orders, the plaintiffs filed a motion for contempt, alleging noncompliance "in all aspects of the 1979 and 1981 orders." Hearings were held in March, June and July of 1986. The district court took the motion for contempt under advisement and has not, to date, ruled on it.

In October 1986, classes were once again offered at the Huron Valley Women's Facility but none were offered at Crane. Four inmates at Crane who were eligible to participate in the four-year degree program, and who expressed interest in participating in such a program, were given the opportunity to transfer to Huron Valley so that they might participate in the four-year degree program there. The defendants argued that transfer of the inmates to Huron Valley was necessary since no school was interested in offering a four-year degree program at both Crane and Huron Valley, given the small number of interested participants at Crane. The four inmates declined to be transferred, and the plaintiffs immediately filed a motion for a temporary restraining order requesting the court to restrain the defendants from transferring the four inmates to Huron Valley, and to mandate that a four-year degree program be offered for the four inmates at Crane. At oral argument on the matter, defendants argued that the court's 1981 order did not require it to offer an educational program at Crane and that, in all events, it was economically infeasible to offer a baccalaureate degree program at both women's institutions. The plaintiffs argued that the defendants were merely engaging in delaying, evasive, and contumacious tactics to avoid compliance with the district court's 1981 order. The court issued a preliminary injunction enjoining the defendants from transferring the four inmates at Crane to Huron Valley and requiring that the defendants implement a four-year baccalaureate degree program at Crane immediately. It is that injunctive order which is appealed from in case number 86–2125.

The defendants represent to this court that despite genuine effort on their part,

they have been unable to interest any educational institution in offering a four-year baccalaureate program at the Crane facility.[4] They represent further that the Department of Education, which is not a party to this action, will no longer provide tuition reimbursement for the degree program now provided for male inmates at Jackson Prison and that, as a result, there will be no four-year degree program offered to male inmates in any Michigan correctional facility thus precluding any basis for a parity-based offering at any women's facility.

When classes leading to a baccalaureate degree did not begin at the Crane Facility on October 21, 1986, the day after the court's preliminary injunction mandating such a program, the plaintiffs filed a second motion to hold the defendants in contempt. A hearing was held on October 31, 1986, and was adjourned to November 6, 1986. Testimony was taken on that date and the district court once again took under advisement the motion for contempt. Apparently at that hearing—the record is unclear on the matter—the district court indicated an intention to appoint an "administrator of education" to ensure compliance with its 1979 and 1981 orders. At the hearing, the district court "appointed" a search committee comprised of administrative and academic officials of the University of Michigan to recommend a candidate for the administrator position, although no order was entered appointing the committee or defining its charge. Apparently both appellants and appellees recommended nominees for the administrator's position.

Hearings were held on April 13 and April 17, 1987, after which the district court entered a Memorandum Opinion and Order which defendants claim had been prepared by the district court many months earlier and, in fact, had been submitted to the parties for their consideration, which appointed Dr. Richard Meisler "administrator to design and implement educational programs for female inmates on a parity with male inmates." It is that order and the appointment of Dr. Meisler which is appealed in case number 87–1466.

II.

Initially, we note that plaintiffs' claims that they have been denied equal protection of the law under the fourteenth amendment by the defendants' failure to provide educational opportunities to women inmates in parity with those offered to male inmates is not at issue in this case. The plaintiffs have prevailed on that claim and the district court's 1979 judgment and 1981 judgment and final order so provide. The single issue that is presented in these consolidated appeals is whether the district court abused its discretion in granting the preliminary injunction in No. 86–2125, and the order appointing administrator in No. 87–1466.

Before discussing that issue, we note preliminarily that defendants' claim that women inmates at the Crane Correctional Facility are not within the class designated by the 1981 order is without merit. The 1979 judgment entered by the district court defined the class as "all female felons who are now or may be in the future, incarcerated at Huron Valley Women's Facility. A sub-class is certified composed of all state women inmates incarcerated at the Kalamazoo County Jail." At that time, the Huron Valley and Kalamazoo Facilities were the only institutions housing women inmates in Michigan. In granting class certification, the court stated, "The action is brought as a class action on behalf of all female inmates in Michigan." Given the facts at the time of the class certification and the court's very explicit statement of its purpose in certifying the class, it is clear that the class consists of all women inmates, including inmates at the Florence Crane Facility, which was opened some five years after the certification of the class.

4. We decline to burden this opinion with a detailed recitation of the highly controverted versions offered to this court by the plaintiffs and the defendants relating to the defendants' alleged efforts to establish an educational program at Crane in order to comply with that portion of the district court's October 1986 preliminary injunction.

## III.

We address first the propriety of the district court's October 20, 1986, temporary injunction as amended on October 31, 1986.[5] A preliminary injunction is an equitable remedy within the district court's discretion and the applicable standard of review on appeal is abuse of discretion. *Christian Schmidt Brewing Co. v. Heilman Brewing Co.*, 753 F.2d 1354 (6th Cir. 1985). As this court stated:

There are four factors to be considered in determining whether the grant or denial of a preliminary injunction was an abuse of discretion: (a) the likelihood of the success on the merits of the action, (b) the irreparable harm which could result without the relief requested, (c) the impact on the public interest, and (d) the possibility of substantial harm to others ... Although these four factors must be considered in assessing a request for a preliminary injunction, the four factors do not establish a rigid and comprehensive test for determining the appropriateness of preliminary and injunctive relief. Instead, the district court must engage in a realistic appraisal of all the traditional factors weighed by a court of equity.

*Christian Schmidt Brewing Co.*, 753 F.2d at 1356 (citations omitted). It is settled that the district court must make specific findings of fact "concerning each of these four factors, unless fewer are dispositive." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985). The requirement that specific findings of fact be made in support of the trial court's grant or denial of a request for a temporary injunction is derived from Fed.R.Civ.P. 52(a) which, in relevant part, provides:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; *and in granting or refusing interlocutory injunctions*, the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review.... (Emphasis added.)

The parties vigorously contest whether, in issuing its injunction, the district court has complied with three of the four criteria laid down in *Christian Schmidt Brewing Co., supra.* Defendants claim, at length, that the facts of this case show that no irreparable harm will result to the four inmates at Crane if a four-year baccalaureate degree program is not offered at that institution because such a program is offered at Huron Valley to which defendants are willing to transfer the four; that it is impossible for it to comply with the injunctive order to provide a baccalaureate program at Crane because no educational institution has been found that is willing to offer that program at Crane, and that the facts show that the district court has ordered defendants to provide educational programming at Crane which is not comparable in any way to educational programming offered to male prisoners at Jackson since, at Jackson, the defendants and the state of Michigan do not provide any educational programming. Such programs as exist are said to be provided by private and public colleges and universities and the defendant merely provides classroom space and, in other small ways, accommodates the inmates' schooling schedules. Defendants claim, in sum, that the facts of this controversy show that what the court has ordered to be done at Crane to achieve compliance with its 1981 order is beyond the scope of the 1981 order, will generate new equal protection claims by male inmates for education programs at Michigan's many other correctional facilities for men, is not warranted by any evidence of noncompliance with the order, and is, in all events, entirely beyond the defendants' ability to comply.

Plaintiffs, on the other hand, insist that there are no facts in dispute in this case

---

5. For purposes of consistency and ease of reference, we will refer to the injunction as having been entered on October 20, 1986, although it was amended in an important respect eleven days later.

and thus no fact finding by the district court was required in support of the issuance of its injunction, and that the injunction was properly issued as a matter of law. Plaintiffs also insist that defendants "contort the facts in their brief in what appears to be an attempt to make something what it is not"; that the "factual arguments" defendants now raise were not raised at the October 20 "evidentiary hearing"; that the defendants "twist the statements of the court ... in such a manner as to make the court sound foolish"; and, somewhat in contradiction to their first claim, argue that "[t]he district court did make findings of fact. They may not be set forth in the textbook manner appellant would like, but they are findings nevertheless."

It is incontestably plain to us that there are a host of highly controverted factual claims, sharply disputed by the parties, from which the district court was necessarily required to pick and choose in order to arrive at the factual conclusions necessary to justify the issuance of its October 20 injunctive order. It is equally clear that the district court necessarily rejected a number of defendants' factual assertions and embraced the plaintiffs' version of the facts on a number of contested matters. Unfortunately, the district court made no record of any factual findings whatever in support of its injunctive order but merely recited in the order the requisite conclusionary "findings," in the familiar formulae language necessary for the issuance of a preliminary injunction. Its order reads:

This matter having come before the Court on Plaintiffs' Motion for Temporary Restraining Order; the Court having reviewed the matter, and heard oral argument, the Court finds that:

1. Those Plaintiff class members incarcerated at the Florence Crane Correctional Facility are covered by the Orders previously entered in *Glover v. Johnson,* 478 F.Supp. 1075 (1979); 510 F.Supp. 1019 (1981) and pursuant to the Order of Intervention, Severance and Transfer entered by Judge Gibson in the matter of *Fair, et al. v. Brown, et al.,* Case No. K 85–535 CA9.

2. Plaintiffs will suffer irreparable harm if four-year degree educational programs are not offered to women incarcerated at the Florence Crane Facility either at the Facility or at a nearby educational facility, beginning October 21, 1986. The Court finds the irreparable harm here to be the denial of Plaintiffs' constitutional rights to parity in educated programming pursuant to *Glover v. Johnson,* 478 F.Supp. 1085 [1975] (1979); 510 F.Supp. 1019 (1981).

3. Any harm to Defendants in providing such programming at the Crane Facility does not outweigh the irreparable harm to Plaintiffs.

4. There is a high likelihood that Plaintiffs will succeed on the merits of this order.

IT IS HEREBY ORDERED that a Preliminary Injunction be issued enjoining Defendants from requiring Plaintiffs to transfer to Huron Valley Women's Facility to receive four-year degree programs; and Orders Defendants as follows:

IT IS HEREBY ORDERED that Defendants, ROBERT BROWN, Director, Michigan Department of Corrections, JAMES LINCOLN, THOMAS K. EARDLEY, JR., GWEN ANDREW, BRUNETTA BRANDY, DUANE L. WATERS, M.D., the MICHIGAN CORRECTIONS COMMISSION provide four-year degree programming for Joyce Dixon, Victoria Hollis, Mildred Perry and Gladys Wilson who are presently incarcerated at the Florence Crane Facility in addition to the programming provided for women prisoners at the Huron Valley Women's Facility.

IT IS FURTHER ORDERED that Defendants continue in the efforts to offer four-year degree programs to all other interested prisoners incarcerated at the Florence Crane Facility.

The injunctive order is unsupported by a memorandum opinion or even a transcript of a bench opinion. As is plain from the order, no facts are recited describing how the women incarcerated at the Florence Crane Facility "will suffer irreparable harm" if a four-year degree program is not

presented at Crane, or why absence of such a program will generate irreparable harm, save the court's legal conclusion that the harm is "the denial of plaintiffs' constitutional rights." Similarly, the court concludes that harm to the plaintiff outweighs harm to the defendants and that the plaintiffs are likely to succeed in the litigation, without reference to any specifics in an evidentiary record and particularly without reconciling the sharp disagreement between the parties about the capacity of the defendant to provide such programs, and the defendants claim that to do so would generate new constitutional deprivations to male prisoners and negatively "impact the public interest."

Without sufficiently specific findings of fact, this court is unable to meet its obligation to properly review the district court's compliance with the criteria mandated by the rule for the issuance of preliminary injunctions.

While specific findings of fact for the issuance of a preliminary injunctive order need not be made as to all four factors listed in *Christian Schmidt Brewing Co.* if fewer are dispositive, *In re DeLorean Motor Co.*, 755 F.2d at 1228, in this instance there are no factual findings by the district court whatever, merely legal conclusions. We are unable therefore to carry out our responsibility to determine the rationale for the court's sweeping order, to determine whether it rests upon facts that have a basis in the record, and thus to know whether, as the defendants charge, the court has abused its very substantial discretion. Supporting findings of fact are especially critical in a case such as this in which the court's order intrudes significantly into the prerogatives of state correctional officials and must therefore be narrowly tailored to remedy the constitutional violation found. *See Kendrick v. Bland,* 740 F.2d 432, 437 (6th Cir.1984).

We must therefore vacate the district court's amended injunctive order and remand the matter to that court for specific findings of fact as required under Fed.R. Civ.P. 52(a) and the cases we have cited.

IV.

On April 17, 1987, the district court signed and entered a Memorandum Opinion and Order appointing Dr. Richard Meisler to serve as a court supervised administrator with authority, *inter alia,*

[T]o design and implement educational programs for female inmates on a parity with male inmates. The administrator shall have full power, subject to the supervision of the Court, to contract for educational services with educational institutions necessary to achieve parity.

IT IS FURTHER ORDERED that defendants shall not circumvent this order by reducing educational programs presently provided male inmates.

IT IS FURTHER ORDERED that defendant bear the cost of the plans designed and implemented by the Administrator.

IT IS FURTHER ORDERED that any State Officers necessary to provide complete relief pursuant to this order be joined as party defendants. (Footnote omitted.)

It is obvious not only from the text of the order but from the events surrounding its preparation and entry that the October 1986 injunctive order and the appointment of the administrator are very closely related. As we have indicated, apparently the memorandum and order appointing the administrator was actually prepared in November of 1986, very shortly after the injunctive order was issued, but was not signed and entered. It appears to have been distributed to counsel for the parties, unsigned, for information purposes. The order recites in considerable detail the history of this litigation, observes that the defendants have "through bureaucratic inertia, intransigence, and resistance [denied] female inmates equal educational opportunities," and finds that the "defendants flouted" the court's 1986 preliminary injunction. The order states that the court "[provided] this detailed chronology to explain [its] conclusion that ordering contempt penalties will not bring compliance." Although the record is unclear, it appears that no evidentiary hearings were ever held primarily for the purpose of making factual

findings on the necessity or desirability of appointing an administrator. Hearings were held in the district court on October 31, November 6, November 13, and November 20, but those hearings appear to have been related to the plaintiffs' motion that the defendants be held in contempt for violation of the October 20 injunctive order.[6] But it is evident from the text of the order appointing the administrator that the order was substantially related to the injunctive order in the sense that it is really the district court's response to its perceived inability to enforce the injunctive order through ordinary contempt proceedings. The court declared as much in the memorandum portion of the order:

\*   \*   \*   \*   \*   \*

After a hearing on October 20, 1986, I granted preliminary relief ordering defendants to provide the courses both at Huron Valley and at Crane beginning October 21, 1986. Defendants flouted this direct order and did not begin courses at Crane.[4]

Defendants' counsel appeared on October 31, 1986 in response to my order to explain why courses had not begun. Characteristically, defendants attempted to obfuscate the issue by substituting counsel who had not previously handled the case.[5] I did not receive an adequate explanation and ordered an evidentiary hearing for November 6, 1986. There are still no baccalaureate courses at Crane.

I provide this detailed chronology to explain my conclusion that ordinary contempt penalties will not bring compliance.[6] Only an Administrator, appointed and supervised by me, can design and implement the educational programs required by my orders.

\*   \*   \*   \*   \*   \*

[4] Plaintiffs brought the violation to my attention in their October 29, 1986 petition asking that I hold defendants in contempt.

[5] After plaintiffs filed their January 22, 1986 petition to hold defendants in contempt, de-

fendants attempted to substitute counsel without providing me advance notice or seeking my permission. This is still more evidence of the low esteem in which defendants hold this Court.

[6] I may nevertheless fine or imprison any defendant responsible for failing to implement my order.

Thus, it is plain that the appointment of the administrator is, in essence, an effort, in lieu of contempt proceedings, to enforce the injunctive order. However, as we have indicated, the injunctive order must be set aside because it is not supported by sufficiently specific findings of fact on the essential criteria for the issuance of injunctive relief required in *Christian Schmidt Brewing Co., supra,* and mandated by Rule 52(a). The order appointing administrator, to the extent that it is an enforcement extension of the injunctive order, suffers, therefore, from the same absence of factual findings to justify it that vitiates the injunctive order. It would be most anomalous to invalidate the court's injunctive order but approve a subsequent enforcement measure carrying its terms into effect.

■ But that is not the only reason we must set aside the order appointing the administrator. Even if it were not so directly related to, indeed generated by, the injunctive order we are dissolving, and could be said to have an independent basis, we think it is an excessively intrusive interference in the prerogatives of a state agency that is not supported by evidence of the quality and quantity required for the exercise of such extraordinary federal judicial power.

We recognize that in appropriate circumstances the district court may, in the exercise of its equitable powers, take such means as are necessary to enforce its judgment finding a violation by a state agency and its officials of the constitutional rights

6. When, in plaintiffs' view, defendants failed to comply with the October 1986 injunctive order, plaintiffs, on October 29, 1986, filed a motion for contempt. A hearing on that motion was apparently scheduled for October 31, 1986, at which time the injunctive order was amended, but the contempt motion was adjourned to November 6. On that date, defendants Brown and Nemecek testified on the contempt issue. Following the November 20 hearing, the motion for contempt was taken under advisement.

of inmates of a state correctional institution. *Hutto v. Finney*, 437 U.S. 678, 687, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978). And while considerations of federalism and comity caution restraint in the intrusion of federal judicial authority into the administration of state correctional institutions, exercise of that authority may include appointment of a court supervised administrator to oversee such aspects of prison policy as have, in the past, resulted in unconstitutional practices. *Kendrick*, 740 F.2d at 438.

However, before a district court undertakes to override the prerogatives of state correctional authorities in the administration of any aspect of prison administration, it must assure itself that no less intrusive means of bringing about compliance with constitutional requisites is available. As this court stated in *Kendrick:*

> It is fundamental that the federal forum, as the ultimate guardian of constitutional rights, possesses the authority to implement whatever remedy is necessary to rectify constitutionally infirm practices, policies or conduct.... This broad, equitable authority, however, is tempered by precepts of comity and federalism.... The restraints of federalism must be applied not only when an injunction is sought against the judicial branch of state government, but also when an injunction is urged "against those in charge of an executive branch of any agency of state or local government.".... Thus the federal equity court in fashioning a remedy must afford relief which is "no broader than necessary to remedy the constitutional violation." ...
>
> These underlying and restricted principles of comity and federalism are perhaps nowhere more compelling than in actions seeking relief against unconstitutional practices, policies and conduct manifest in state penal institutions.

740 F.2d at 437 (citations omitted).

The court's order appointing the administrator eloquently expresses the court's frustration with the lack of progress in bringing regular two-year educational programs and four-year baccalaureate programs to the female inmates of Michigan's correctional institutions. Although the court's order fully details the procedural and some of the factual history of the litigation, it does not contain any specific factual findings detailing the acts or omission of the defendants that led the court to conclude that the "defendants flouted" the district court's orders. While it is very clear that the education program for women the district court ordered in 1979 and 1981 has not come to fruition, and that at the time of the appointment of the administrator educational opportunities for . men and women in the Michigan prison system were not in parity, neither the court's order nor any record made in support of it contains evidence of the quality and weight necessary to justify the conclusion that the defendants willfully disobeyed the court's order, violated the plaintiffs' constitutional rights, and forfeited to the federal judiciary the defendants' constitutional authority to continue to administer all aspects of the Michigan correctional system. The district court has undertaken the extraordinary measure of placing an element of Michigan correctional prison administration in virtual receivership without the requisite showing or findings of "exceptional circumstances" which the Supreme Court and this court have often pointed out are necessary for the imposition of such an intrusive remedy. *See, e.g., In re U.S.*, 816 F.2d 1083 (6th Cir.1987), and the authorities discussed therein.

In *Kendrick*, this court stated:

> These underlying and restrictive principles of comity and federalism are perhaps nowhere more compelling than in actions seeking relief against unconstitutional practices, policies and conduct manifest in state penal institutions. The rationale was articulated by the Supreme Court more than a decade ago:
>
> > It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations and procedures, than the administration of its prisons.... The strong considerations of comity that require giving a

state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons. *Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 93 S.Ct. 1827, 1[8]37–38, 36 L.Ed.2d 439 (1973)....

Federal restraint into intrusion of a state penal institution is counseled for at least two reasons:

[J]udicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the providence of the Legislative and Executive Branches of our Government, not the Judicial. (Citations omitted.)

Accordingly, it was incumbent upon the district court in the action *sub judice* to impose the least intrusive remedy available. In a factually similar case, the Ninth Circuit has articulated that:

[T]he remedy may be only so much as is required to correct the specification. The remedy may go beyond this only when there is a record of past constitutional violations and violations of past court orders. *Hoptowit v. Ray*, 682 F.2d 1237, 1247 (9th Cir.1982).

*Kendrick*, 740 F.2d at 437–438.

The defendants have made a persuasive, if not conclusive, case for the proposition that they have done all in their power to comply with the court's 1979 and 1981 orders to provide educational parity for female and male inmates. The district court obviously has concluded otherwise but has not made sufficiently specific findings of fact, choosing between contested factual claims and rejecting, without evidentiary support, the defendants' protestations of inability to comply with the court's wishes. The court has not, in appointing the administrator, acted upon a record that contains even minimally persuasive evidentiary support for its conclusions that the authority of state correctional officials should be sus-

pended and, indeed, supplanted by a court supervised administrator with powers to secure to the plaintiffs the constitutional rights guaranteed them under the 1981 order.

The record before us is not deficient solely because it does not contain adequate findings of fact, as distinguished from mixed ultimate conclusions of fact and law, that defendants have willfully disobeyed the district court's 1979 and 1981 orders. It strongly suggests that the district court has not attempted to exhaust a number of methods to enforce its order that are less intrusive than placing a portion of the state correctional administration in virtual receivership. The district court order must be obeyed, and the court, as it observed, is not required to merely issue its injunction and then hope for compliance. But the record does not support the district court's conclusion that the contempt proceedings will not bring about compliance with its orders. The motion for contempt was not followed by sufficiently exhaustive evidentiary hearings and, indeed, was never resolved in an order of any kind, save the order appointing the administrator.

Quite aside from the reticence a federal court should have, as a matter of federalism and comity, to attempt to administer any portion of a state correctional system program except in the most compelling situations, there is no record showing in this case that the court cannot enforce its orders itself, perhaps with the assistance of a monitor, but without the intrusive interference of a judicial administrator.

We think that on the basis of the record before us, the district court has not been presented with an evidentiary record that justifies that extraordinary remedy and has, therefore, abused its discretion in appointing the administrator.

V.

We are respectful of the district court's judgment that the plaintiffs' equal protection rights have been violated and we have no occasion to question the court's requirement that the appropriate remedy is to require the defendants to provide edu-

cational programs for women inmates that are on a par with those being provided to men. And it is not an easy task to devise a formula for determining what "parity" is, in the circumstances of this case. We suggest that upon remand the district court might wish to consider the following:

1. Making findings of fact specifically detailing
   a) The history of educational offerings at all Michigan correctional institutions since the court's 1981 "Final Order."
   b) The current state of educational programs at all Michigan correctional institutions.
   c) The identity of the public and private colleges and universities now providing educational programs to Michigan prison inmates, and the identity of the specific Michigan correctional facilities in which such programs are being offered.
   d) The per capita amount now being expended for two-year and four-year degree programs for women and for men at such institutions, and the source of those funds.
   e) The efforts expended by the defendants to comply with the court's 1981 order.
   f) The specific manner in which the defendants have not complied.
   g) The estimated total cost and per capita cost of educational programs leading to two and four-year degrees.

2. Developing a detailed plan for remedying the equal protection violation through ordering expenditures for educational programs for women inmates on a parity with those already being offered to men, if any, on a per capita, not a total expenditure, basis, i.e., an educational program based on parity of expenditures rather than a plan requiring the same degrees, courses and subjects for both men and women.

## VI.

We therefore VACATE both the preliminary injunction and the order appointing an administrator. We REMAND to the district court to make specific factual findings regarding the defendants' performance in attempting to comply with the district court's 1981 order and the least intrusive means to accomplish that goal. The district court should develop a detailed plan for remedying the equal protection violation, limiting its equitable powers to requiring equal educational opportunity by ordering that expenditures for education programs within the Michigan state correctional system be allocated among all interested and eligible inmates, on an approximate per capita basis.

ENGEL, Chief Judge, concurring.

I concur fully in Judge Ryan's thoughtful opinion. I add these thoughts only to caution that the court's reference to per capita allocation of costs not be overread but be considered in the overall context in which it was intended.

Equal protection is not the same as identical treatment, for identical treatment may indeed result in very unequal protection. Nor is exact mathematical parity of financial per capita expenditure to be similarly equated. All of these factors may be important considerations as Judge Ryan has so carefully pointed out, and in this I fully concur. I write separately only to emphasize that evidence of comparable per capita expenditure is not an end in itself but may be one consideration—by no means controlling—in the more difficult task of determining first whether equal protection of the law has been denied and, if so, in determining how most effectively that deprivation can be cured.

In the context here, it is obvious that regardless of the equal protection clause, there are many and significant differences between the sexes and there is nothing humanity can do about them even if we would. For one thing, the proportion of women in penal institutions is far smaller than that of men. There are physical differences. There are physiological differences. There are probably differences in the nature of the crimes for which men and women find themselves incarcerated and

there may in consequence be differences in the relative dangerousness to the public posed by such inmates. The task of an even-handed penological system responsible for the confinement of both sexes is to adjust realistically to such differences without temptation to use them to mask latent bias or uncorroborated assumptions. The very difference between the sexes may mean in a given situation that the delivery of rehabilitative services may necessarily require the varied expenditure of monies because of natural differences in the sexes or in their conditions of confinement. In short, I would not like to think that anything we have said here is construed to require or encourage an oversimplistic approach to what is in reality a difficult task requiring a full measure of judicial thought.