871 F.2d 1087
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Everett HADIX, et al., Plaintiffs-Appellees,
v.
Perry M. JOHNSON, et al., Defendants-Appellants.
 No. 88-1144.
 United States Court of Appeals, Sixth Circuit.
 March 30, 1989.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an interlocutory appeal from a temporary restraining order preventing prison officials at the State Prison of Southern Michigan ("SPSM") in Jackson, Michigan, from examining files at the Prison Legal Services ("PLS") office without the presence of a civilian member of the staff.
 
 
 2
 The underlying case concerns a prisoner class action lawsuit claiming violations of 42 U.S.C. Sec. 1983 with respect to conditions of confinement at the SPSM. In May 1985, the court entered a comprehensive consent decree which addressed most of the issues raised by the plaintiffs. The case then proceeded to a bench trial on issues concerning access to court claims. At the present time, the district court has held that the constitutional right of access to the courts requires the presence of the PLS within the walls of SPSM.
 
 
 3
 This interlocutory appeal addresses the method by which prison officials may be allowed to search the PLS offices. Appellees do not contest that the prison officials have the right to search the offices, but appellees worry about the potential for files being taken or read when PLS civilian personnel are not present.
 
 
 4
 Appellees filed a request for a temporary injunction ex parte, and the court ordered a hearing on the request which was held on November 10, 1987. At the hearing, appellants disputed the extent of the attorney-client privilege in these circumstances and offered to give evidence relating to security reasons for the search procedures. The appellants also suggested that the presence of a shift commander during the search who could then notify PLS of any search would be adequate protection of the attorney-client privilege. The district court rejected the appellants' arguments and issued a temporary injunction against the appellants, enjoining them from searching the PLS offices without PLS civilian personnel being present unless they give two hours advance notice of the search. Appellants took an interlocutory appeal as of right invoking jurisdiction under 28 U.S.C. Sec. 1292(a).
 
 
 5
 * The appellants contend that the evidence before the district court was not sufficient to grant permanent injunctive relief. This contention results from the confusion concerning whether the district court's order was in fact permanent injunctive relief or temporary injunctive relief. The appellants claim that there was a permanent order because of the entry on the docket sheet of a "permanent" injunction. However, the original request filed by the appellees only requested temporary injunctive relief, and the appellees maintain that it is their belief that the injunction granted was temporary. Furthermore, the judge never said orally or in writing that the injunction was permanent. Indeed it appears from its post-order memorandum that the district court did not specifically denominate its original order as temporary because it was under the impression that the parties were willing to agree to its final order--an impression first disabused by the notice of appeal.
 
 
 6
 We adopt the construction urged by the appellees. The district court never notified the appellants of an intention to issue a permanent injunction or provide the proper notice before an issuance of a permanent injunction, and we will assume that the district court would grant the proper procedural notification before the issuance of a permanent injunction. Therefore, we will examine the sufficiency of the district court's order under the standards for a temporary injunction.[1]
 
 
 7
 The granting or denial of a preliminary injunction is committed to the sound discretion of the trial court. USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94, 98 (6th Cir.1982). In determining on appeal whether the district court abused its discretion, "we must consider whether the plaintiffs have shown a strong likelihood of success on the merits; whether the plaintiffs have shown irreparable injury; whether the issuance of a preliminary injunction would cause substantial harm to others; and where the public interest lies." Ibid. (quoting Adams v. Federal Express Corp., 547 F.2d 319, 323 (6th Cir.1976)).
 
 
 8
 With regards to likelihood of success on the merits, we need only consider whether the plaintiffs would likely be entitled to the issuance of a permanent injunction in the present case.
 
 
 9
 Since the district court has held that the presence of the PLS offices within the walls of the prison is necessary to protect the prisoners' constitutional right of access to the courts, we conclude that an analysis of the permanent injunction regarding the attorney-client privilege, a derivative of this right, should first be considered in relation to a framework of a permanent injunction to remedy a constitutional violation. See Procunier v. Martinez, 94 S.Ct. 1800, 1814 (1974).
 
 
 10
 Appellants correctly point out that in order to be entitled to permanent injunctive relief for an alleged constitutional violation, the plaintiff must establish the fact of the violation, the presence of a continuing irreparable injury and the lack of an adequate remedy at law. Newman v. State of Alabama, 683 F.2d 1312, 1319 (11th Cir.1982) cert. denied, 460 U.S. 1083, 103 S.Ct. 1773 (1983).
 
 
 11
 In U.S. v. Upjohn, 600 F.2d 1223, 1225 (6th Cir.1979), rev'd on other grounds, 101 S.Ct. 677 (1981), this court concluded that the trust at the heart of the attorney-client privilege is, by its nature, fragile. The trust may be irreparable once broken because there is really no adequate legal remedy for a violation of the privilege. It is true that not all communications between attorney and client are privileged. Fisher v. United States, 96 S.Ct. 1569 (1976). However, it is also true, and appellants do not dispute, that the application of the attorney-client privilege is critical in the areas to which it applies. Upjohn, 600 F.2d at 1225-1226. Further, prisoners may also assert a client's right to an attorney-client privilege. Procunier, 94 S.Ct. at 1814.
 
 
 12
 However, in this case we are not dealing with the world at large, but with the peculiar concerns of a maximum security prison. In O'Lone v. Estate of Shabazz, 107 S.Ct. 2400, 2404 (1987) and Turner v. Safley, 107 S.Ct. 2254, 2261 (1987), the Supreme Court held that prison officials need only show that a regulation is reasonable to justify its impact on a valid constitutional right. However, the court also noted that if an inmate may point to an alternative that "fully accomodates the prisoner's rights at de minimis cost to valid penalogical interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." Id. at 2262.
 
 
 13
 Though given an opportunity by both the district court and this court, the appellants have not shown that a permanent injunction would be more than a de minimis intrusion into a valid penalogical concern. Thus, the probability that unaccompanied searches of the PLS offices would violate a constitutional right without an adequate legal remedy provides support for the probability of the plaintiffs succeeding in a hearing for a permanent injunction in these circumstances. Therefore, appellants have shown a likelihood of success on the merits.
 
 
 14
 Furthermore, as discussed supra the attorney-client privilege, once broken, is irreparable. This holds true in the context of a preliminary injunction as well as a permanent injunction. Balanced against the great probability of harm to the plaintiff of not issuing the injunction, is the inability of the prison officials to demonstrate any specific harm to them from the issuance of the injunction.
 
 
 15
 This court gave appellants the opportunity to demonstrate that their searches would be inhibited in any way at all by requiring PLS personnel to be present, and though appellants claim that they had various security concerns, they were unable to articulate any of these at oral argument.[2] Prison officials can search the PLS offices any time the office is open. If the office is closed, no imminent security danger has been articulated or even intimated, since the office is completely sealed while waiting for the arrival of PLS civilian personnel. We must agree with the court below that any impact on prison security is de minimis. Therefore, the prison officials have not met even their small burden of justifying a possible violation of the attorney-client privilege.
 
 
 16
 The overwhelming evidence before the district court at the time the injunction was issued supported the district court's conclusion that a temporary injunction was appropriate. Furthermore, on the record before us, we conclude that the public interest is in no way disserved by the injunction. Therefore, we find no abuse of discretion.
 
 II
 
 17
 The appellants attempt to convince this court that the proper analysis of this issue should be determined in relation to the law of searches and seizures. Appellants correctly assert that a prisoner has no reasonable expectation of privacy in his cell or other parts of the prison. Bonitz v. Fair, 804 F.2d 164, 170 (1st Cir.1986). This analysis, however, completely ignores the attorney-client privilege. Appellants have pointed to no cases where any court has held that prisoners have no right to an attorney-client privilege, nor have they attempted to show that the attorney-client privilege is based on the Fourth Amendment. Further, PLS has not disputed the right of prison officials to conduct searches. It has only contended that the attorney-client privilege should be protected during those searches. Therefore, Fourth Amendment analysis is inapplicable to the present case.
 
 
 18
 The temporary injunction of the district court is AFFIRMED.
 
 
 19
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 20
 The district court entered its temporary injuction, if that is what it was, after a hearing at which the plaintiffs were not required to present evidence and the defendants were not permitted to. The hearing was held on an application that had not been properly filed and that was not supported, as far as we can tell, by affidavits. It is doubtful whether the defendant prison officials were given adequate notice of the case they would have to meet, and it is clear that they were enjoined from implementing their proposed new prison search procedures without having been allowed to explain from the witness stand what the proposed procedures were and why they were thought to be necessary. I find this, I must say, troubling.
 
 
 21
 The defendant officials obviously had serious concerns about the security of the prison that they--and not the district court--were responsible for running. Whether those concerns would be frustrated by the conditions the plaintiffs sought to have the court impose is a factual question best answered on the basis of evidence presented by competent witnesses, it seems to me, not argument presented by lawyers who may or may not have been privy to all the facts. Witnesses who presumably had firsthand knowledge of the facts were available to give evidence at the hearing conducted by the district court on November 10, 1987, but the court refused to hear their testimony. We may be able to guess why the court refused to take evidence, but I do not think the refusal is something we can excuse.
 
 
 22
 Without competent evidence, the district court was in no position to make the findings of fact required of it by Rule 52(a), Fed.R.Civ.P. ("in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action"). And without adequately supported findings of fact, a court of appeals "is unable to meet its obligation to properly review the district court's compliance with the criteria ... for the issuance of preliminary injunctions." Glover v. Johnson, 855 F.2d 277, 284 (1988).
 
 
 23
 It does not strike me as farfetched to suppose that, as defense counsel argued before the district court, a requirement for advance notice to Prison Legal Services and a wait of up to two hours before the prison office occupied by PLS could be searched during off-hours might tend to reduce the number of off-hour searches that would otherwise be conducted. Surely no court of equity--particulary a federal court that is obligated to give the greatest possible deference to the decisions of state officials vested with direct responsibility for the operation of a state prison--could consider such a reduction anything but undesirable.
 
 
 24
 It is worth noting, in this connection, that the services provided through the PLS office had not, in the past, been confined to legal services. Defendants' counsel was prepared to show that James Hadix, one of several prisoner paralegals who worked in the office, had been a participant in a drug smuggling ring that used the PLS office for at least a year. Without the knowledge of the paid professional staff, drugs were apparently brought into the office in reams of xerox paper and were then distributed by Mr. Hadix to the smuggling ring's customers.
 
 
 25
 Before Paralegal Hadix was finally caught out, as I gather from statements made by plaintiffs' counsel at the November 10 hearing, it had been the practice of the prison officials to conduct searches of the PLS office only in the presence of the Director of Prison Legal Services. At some point during the week of November 2, 1987, according to plaintiffs' counsel, Prisoner Legal Services was advised by memorandum that all keys to the office and to the office file cabinets would henceforth "be turned over to the control center to be kept in a secure area there," and that searches would henceforth "be conducted at any time, day or night, whether or not the Director of the Office [could] be present...." It seems to be undisputed that a shift commander was to be present to insure the integrity of the files and to make sure that the searches would be confined to looking for contraband, and the district judge himself acknowledged "I'm sure that these people are not going to fiddle around with inmate files."* It also seems to be undisputed that among the reasons for the change in procedure were the discovery of the drug smuggling operation at the PLS office and the fact that a prison officer had recently been killed at a post directly outside the PLS area.
 
 
 26
 The announced change in procedure apparently prompted counsel for the class action plaintiffs to prepare a written petition for a temporary restraining order. Whether the petition complied with the requirements of Rule 65(b), Fed.R.Civ.P., we do not know; notwithstanding the filing requirement imposed by Rule 5(d), Fed.R.Civ.P., the petition was never filed with the district court. The joint appendix does not contain a copy of the petition, and this panel has never seen it. The unfiled petition may well have been handed to the district judge, however, because the court's order starts out with a reference to "Plaintiffs' Petition for Ex Parte Temporary Restraining Order dated November 6, 1987...." Whether the defendants were ever favored with a copy of the petition is unclear. The record contains no proof of service, of course.
 
 
 27
 Upon learning of plaintiffs' desire for a restraining order, the district judge evidently granted a little irregular ex parte relief. As the judge stated at the November 10 hearing, "I talked to [a] Deputy Warden ... on the phone the other day. * * * [M]y conversation with Deputy Warden Jackson and later confirmed with Warden Jabe was that until I had an opportunity to hear this, there would be no search made outside of Prison Legal Systems' hours unless [the PLS director] was notified and could be present."
 
 
 28
 Unlike ex parte temporary restraining orders, which are supposed to expire by their terms within ten days after they have been entered of record, see Rule 65(b), Fed.R.Civ.P., preliminary injunctions have no specific built-in termination point and are not ordinarily issued without at least five days notice to the adverse party. Rule 65(a)(1), Fed.R.Civ.P., provides that "No preliminary injunction shall be issued without notice to the adverse party," and Rule 6(d) provides that "A written motion ... and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court." Wright and Miller comment that "[i]n many instances a shorter notice period would compromise the opposing party's ability to marshal evidence and present his arguments against the issuance of the injunction, which might violate due process standards." 11 Wright and Miller, Federal Practice and Procedure Sec. 2949, at 468.
 
 
 29
 If the plaintiffs' elusive motion was in fact dated November 6, as the district court said, it seems improbable that either the motion or any notice of hearing could have been served on defendants at least five days before the November 10 hearing date--and there was no court order fixing a shorter period. This is not a mere technicality, in my view. The requirement of adequate written notice is important; it is meant "as a device for securing an opportunity for the non-moving party to muster his best argument, to plan his strategy, and to put his best foot forward. In short, adequate notice helps the court secure a just determination." Schlesinger Partnership v. Fluor Corp., 671 F.2d 739, 742 (2d Cir.1982).
 
 
 30
 We do not know how much time was actually afforded the defendants to marshal their evidence and muster their arguments prior to the November 10 hearing, just as we do not know what opportunity defense counsel had to review the evidence with his prospective witnesses. Had the witnesses been allowed to testify, to be sure, both the failure to give the requisite five days notice and the failure to file a proper written motion, properly supported by sworn affidavits, might have turned out not to be prejudicial. But because the prospective witnesses were refused permission to testify, the failure to follow the rules becomes much more problematic, to my way of thinking.
 
 
 31
 The "case" with which defendants' counsel found himself confronted at the November 10 hearing turned out to consist of an unsworn statement by plaintiffs' counsel taking up approximately two pages in the transcript. Defense counsel began his own remarks, not surprisingly, "by noting that there's been no evidence offered or presented by the Plaintiffs to show irreparable harm." No such evidence was presented at any stage of the proceedings. And the district court showed no interest whatever in defense counsel's repeated offers to present evidence on the appropriate scope of the injunction that the court was clearly determined to grant.
 
 
 32
 Where a written application for a preliminary injunction has been properly filed, with appropriate supporting affidavits, the taking of evidence may not be necessary if there is no serious dispute about the facts. SEC v. Frank, 388 F.2d 486, 490 (2d Cir.1968). The application itself is supposed to state the grounds for the injunction "with particularity," see Rule 7(b), Fed.R.Civ.P., and there may be no need for a hearing if the facts are uncontested. Where the facts are in dispute, however, as Judge Friendly said in Frank, "the inappropriateness of proceeding on affidavits attains its maximum and, even if the plaintiff's need is great, it will normally be possible for the judge within the allotted time to conduct a hearing that will illuminate the factual issues although probably not settling them." Id. at 491.
 
 
 33
 If it is inappropriate to proceed on affidavits in such a case, it is no less inappropriate to proceed solely on the unsworn statements of counsel, without any affidavits at all. The reasonableness of the restraints sought by the plaintiffs in this case obviously involved factual questions, and to foreclose all testimony--particularly when knowledgeable witnesses were in the courthouse, ready, willing, and able to take the stand--strikes me as a patent abuse of discretion. As this court held in SEC v. G. Weeks Securities, 678 F.2d 649, 651, (6th Cir.1982),
 
 
 34
 "Rule 65 requires a hearing before a preliminary injunction may issue. A hearing implies the opportunity to be heard and to present evidence. Detroit and Toledo Shore Line R. Co. v. Broth'd of Local F. & E., 357 F.2d 152 (6th Cir.1960). Observance of the Rule's hearing requirement is particularly important where the facts are disputed...." (Quotation from Carpenter's Dist. Council v. Cicci, 261 F.2d 5, 8 (6th Cir.1958), as quoted in Broth'd of Local F. & E., 357 F.2d at 153-154, omitted.)
 
 
 35
 Compare Medico Security Locks, Inc. v. Swiderek, 680 F.2d 37, 38 (7th Cir.1981), where the trial court was held to have abused its discretion in granting a preliminary injunction without "the holding of any hearing whatsoever and in the absence of any affidavits or even a verified complaint."
 
 
 36
 Whether the order here under review is a "permanent" injunction, which is what the district court's own docket sheet calls it, or a "temporary" injunction, as it is characterized by this court, seems to me immaterial. Courts are no more free to enter preliminary injunctions without evidentiary support than they are to enter permanent injunctions without evidentiary support. See ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987) ("The party seeking a preliminary injunction bears the burden of producing evidence ...").
 
 
 37
 Every order granting a preliminary injunction, moreover, like every order granting a permanent injunction, is required to "set forth the reasons for its issuance." Rule 65(d), Fed.R.Civ.P. And the requirement of Rule 52(a) that the trial court find the facts specially is no less applicable to preliminary injunctions than to permanent injunctions. Glover v. Johnson, 855 F.2d 277, 282 (6th Cir.1988). There was no compliance with these requirements here.
 
 
 38
 On April 1, 1988, after learning that the defendants had appealed the injunction in this case, the district court did file a supplemental memorandum opinion. Although helpful in several respects, the supplemental memorandum does not seem to me adequately to fill in the gaps in the record. The memorandum includes a finding that the injunction's "effect ... if any, upon the interests of the prison administration is clearly de minimus " [sic], but in the absence of a proper evidentiary record, I am at a loss to understand the basis for such a finding. The order in the case before us, like the order at issue in Glover v. Johnson, seems to me to represent "excessively intrusive interference in the prerogatives of a state agency that is not supported by evidence of the quality and quantity required for the exercise of such extraordinary federal judicial power." 855 F.2d at 285. (Emphasis supplied.)
 
 
 39
 The district judge is an experienced and respected jurist, and I cannot believe that he is unaware of the importance of developing an evidentiary record before issuing injunctions against state agency personnel. What happened here, I suspect, is that as the November 10 hearing progressed, the judge came to think of it as a sort of settlement conference. The transcript of the hearing discloses no agreement between the parties on the two-hour notice provision that is being challenged in this appeal, but in his supplemental memorandum the district judge concedes that "[a]t the hearing I concluded that the parties had agreed to the Order." That erroneous conclusion may explain the otherwise inexplicable issuance of the injunction, but it certainly does not justify it. The injunction, in my opinion, should be vacated forthwith. This court having elected not to follow that course, I respectfully dissent.
 
 
 
 [1]
 In its brief, the State made no objection to the procedure afforded them as being inadequate for the granting of a preliminary injunction. Therefore, we have not addressed the procedural objection raised in the dissent
 
 
 [2]
 We do not differ with the dissent that the possibility of drug smuggling is of grave concern; however, the appellants have been unable to demonstrate or even allege how the search procedures outlined in the preliminary injunction restrain dealing with that concern
 
 
 *
 Plaintiffs' counsel did not offer any reason for supposing it probable that any shift commander would allow officers conducting the searches to read the contents of the PLS files, as opposed to simply assuring themselves that the files did not contain drugs, weapons, cell keys, or other contraband. In 1987, it should be noted, PLS did not represent prisoners in lawsuits against officials of this prison--so unless one is prepared to assume that the officers had a very peculiar taste for legal prose, it is hard to see what motive they could have had for reading anything